THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JONATHAN BYNUM *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 79-1082, 79-1083 cons.

Opinion filed December 2, 1981.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant Eddie Watts, Jr.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant Jonathan Bynum.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Susan Ruscitti Grussel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This consolidated appeal concerns the armed robbery convictions of Jonathan Bynum and Eddie Watts, Jr., the defendants. After a jury trial, Bynum was sentenced to 15 years imprisonment and Watts was sentenced to 30 years imprisonment. Bynum contends that the trial court erred in sustaining the State's objections to his questions at the hearing on the motion to suppress identification testimony. He also contends that he was denied effective assistance of counsel. Both defendants argue that error occurred when evidence of other crimes was admitted against them.

The convictions in the instant case were for the armed robbery of Clifford Cooper on July 21, 1978, at 12:10 a.m., near 1600 South Homan Avenue, in Chicago, Illinois. Cooper's wallet and his mother's automobile were taken.

Prior to trial, a motion was made to suppress evidence of two robberies that occurred shortly before and after the Cooper robbery. These robberies occurred at the Skylark Lounge, located in the 2700 block of West 16th Street, and on the street in the vicinity of the 3500 block of 77th Street. The trial court ruled that evidence of other crimes would be admissible for the limited purpose of identification and placing the defendants in the vicinity of the armed robbery of Clifford Cooper. The court also ruled that the witnesses to the other crimes could testify that they had seen Watts with a gun.

At trial, Jerry Jagade testified that on July 20, 1978, at approximately 11 or 11:30 p.m., he was present at the Skylark Lounge. Three people, including Watts, entered the tavern. Watts had a revolver and another man was carrying a shotgun. Jagade identified People's exhibit No. 5 as a photograph of a shotgun similar to the one used at the tavern. He stated that he could see the third person only from the waist down because he was lying on the floor at the time.

Clifford Cooper testified that on July 21, 1978, at about 12:10 a.m., he was with Craig Saddler. Cooper was driving his mother's car, a brown, four-door, 1972 Delta 88, license plate number YD 8822. The car was stopped near the intersection of Homan and 16th Street under a street light. Additional lighting was given off by a liquor store which was approximately three to eight feet from the car. At that time a man approached the car on the passenger side and asked for a ride. The man,

who was identified by Cooper as Watts, stood there for about three to five minutes. While Watts was offering them money, the rear door of the car was opened and another man jumped into the car behind Cooper and held a shotgun to Cooper's head. Watts and a third man entered the back seat. Watts sat in the middle and the third man sat behind Saddler.

Cooper testified that he was ordered to drive north on Homan, and turn west on Monroe Street. When the car was about one and one-half blocks west of Homan he was ordered to stop the car. Watts pulled Cooper out of the car; and after Saddler got out of the car, the car proceeded west on Monroe, south on Central Park and west on Jackson. Five minutes later, Cooper and Saddler stopped a squad car.

Cooper further testified that he gave the police a description of Watts and the third man.[1] At about 12 p.m. on July 21, he viewed a six-man lineup and identified two individuals, Watts and Smith. Cooper identified People's Exhibit No. 5 as a photograph of a shotgun that was the same or similar to the one held by the first man who entered the back seat of the car.

Craig Saddler gave testimony that was substantially similar to Cooper's. He identified Watts and Bynum and said that Bynum was the person who sat in the back seat of the car behind Cooper. Saddler testified that he saw Bynum's face when Bynum slid across the back seat of the car and when he handed Bynum a match. Saddler stated that he identified Watts, Bynum and Smith at a police lineup.

Chicago Police Officer Thomas Wollschlager testified that on July 21, 1978, at approximately 12:45 a.m., he observed an abandoned 1972 black and brown, four-door Oldsmobile, license plate number YD 8822, at 73rd Place and Central Park. The car was registered to Ada Cooper.

Donna Zorich testified that on July 21, 1978, at about 12:50 a.m., she was sitting with a friend in a 1974 white Pontiac automobile, license plate number EN 9889. The car was in the middle of the street in the 3500 block of 77th Street.

During a sidebar, the trial court stated that Zorich could not testify that she saw the defendants in the Pontiac, that she was in the car with the defendants, or that she called the police. The judge ruled that Zorich could only testify that she saw the defendants in a car that night.

When Zorich resumed testifying, she identified Watts as the person she saw in the vicinity of the car. She stated that she saw Watts' face after he got into the car and sat right next to her. Defense counsel's objection to this line of questioning was sustained. Zorich then stated that she observed Watts' face for 30 seconds.

Chicago Police Officer Michael Hughes testified that he received a radio message at about 12:50 a.m. on July 21, 1978, concerning a 1974

---

[1] The third person indicted with Watts and Bynum was Gary Lee Smith. Smith was tried separately.

white Pontiac, license number EN 9889. He observed that car, occupied by two or three black males, travelling east on 79th Street and gave chase. The driver lost control of the car at approximately 2100 West 79th Street and the occupants exited. Officer Hughes testified that Watts and Smith ran into a prairie located to the south of the car. A third person, who exited from the driver's side, ran in a southeasterly direction.

When other officers arrived, Hughes told them that three males had exited the car. He gave descriptions of the first two and then returned to the abandoned Pontiac. He found a loaded shotgun, a bag of money, two wallets, and some clothing in the car. One of the wallets belonged to Clifford Cooper. Watts and Smith were caught by the other police officers who brought them to Hughes for identification.

The State's final witness, Chicago Police Officer Ronald Gall of Area 4 Robbery, testified that on July 21, 1978, he was sent to the Skylark Lounge, a tavern at 2725 West 16th Street. After a sidebar and motion for mistrial by both defendants, the court restricted Officer Gall's testimony to his investigation of the Cooper robbery. Gall stated that he went to the 8th district police station and interviewed Smith. He then transported Smith and Watts to Area 4 and questioned Smith again. Gall then proceeded to an apartment building at 7255 South Euclid in search of the third offender. He arrested Bynum and brought him before Smith for viewing.

On redirect examination, Officer Gall stated that the description he had for the third offender included that person's age, size and address. The suspect's name was allegedly Joe Barrett and he worked for REO Movers. When the suspect was arrested it was ascertained that his name was Jonathan Bynum. He had a REO patch on his left sleeve.

The defendants rested without presenting any evidence, and the jury returned guilty verdicts against them.

Defendant Bynum initially argues that the trial court erred in sustaining the State's objections to his questions at the hearing on the identification suppression motion.[2] Specifically, Bynum contends that he was not allowed to question Craig Saddler fully regarding his opportunity to view the offenders, the description of Bynum that Saddler gave to the police and the order in which Saddler identified the suspects at the police linup.

■■■ It is well settled that a defendant has a right to a fair and impartial hearing to determine whether his identification was based solely on the

---

[2] The State contends that Bynum has waived all errors he argues on appeal because he failed to raise them in his nonspecific oral post-trial motion for a new trial. The State relies on *People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931, but we find that case distinguishable. In *Boyd*, the hearing on the post-trial motion was continued to allow defense counsel ample time to prepare a motion specifying the grounds for error. In the case at bar, defense counsel was not given additional time to prepare a written motion.

witness' observation of the robber at the time of the crime or whether it was improperly influenced by investigatory procedures or other extraneous factors. (*People v. Robinson* (1970), 46 Ill. 2d 229, 263 N.E.2d 57.) It is also well settled that the burden is on the defendant to prove that pretrial procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of the law. (*E.g., People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459; see *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121.) We have reviewed the record in the instant case and find that reversible error did not occur when the trial court sustained certain of the State's objections during the examination of Craig Saddler by the defense. Many of the objections were sustained on the basis that the questions were not probative of suggestiveness, and we agree with that determination.

■■ Furthermore, even where an erroneous ruling is made at an identification suppression hearing, the error may be harmless if the reviewing court, based on an informed judgment, can perceive from the trial record the presence of an independent origin for the in-court identification. (*People v. McTush* (1979), 78 Ill. App. 3d 603, 397 N.E.2d 463, *rev'd on other grounds* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) In the case at bar, Saddler's in-court identification of Bynum was based on his ability to observe Bynum at the time of the offense. Saddler testified that he saw Bynum's face after Bynum got into the car and slid across the back seat. Light was emitted from a street light overhead and from nearby stores. Saddler saw Bynum's face again when he turned around to hand Bynum a match. Also important is the fact that Saddler identified Bynum on the day of the robbery. (See *People v. Sakalas.*) Considering the totality of circumstances, even assuming suggestive identification procedures, we find there was a sufficient independent origin for Saddler's in-court identification of Bynum.

Bynum next contends that he was denied effective assistance by counsel who was appointed to represent him five days before trial. Bynum bases this contention on counsel's failure to request transcripts of the lengthy pretrial hearings which were held prior to the appointment of his counsel. As a result of this failure, Bynum argues that his attorney was not familiar with his case and thereby erroneously made a motion to dismiss and erroneously objected to Watts' motion to suppress evidence of Gary Smith's confession. Bynum also argues that he was prejudiced by counsel's failure to impeach Saddler's trial testimony with statements made at the pretrial hearing.

■■ Traditionally, a defendant's representation by court-appointed counsel has been told constitutionally deficient where counsel was actually incompetent, as reflected by his performance as a trial attorney, and where the incompetence produced substantial prejudice to the defendant, without which the result would probably have been different.

*(People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523.) Competency of counsel is presumed, and this presumption can be overcome only by strong and convincing proof. *(People v. McCraven* (1981), 97 Ill. App. 3d 1075, 424 N.E.2d 23.) Furthermore, competency depends upon the particular facts of each case, viewed in their totality, rather than from a narrow focus upon isolated instances occurring during the course of trial. *People v. Clark* (1977), 47 Ill. App. 3d 624, 365 N.E.2d 20.

In support of his argument Bynum cites *People v. Jackson* (1968), 96 Ill. App. 2d 99, 238 N.E.2d 234, in which an attorney was declared incompetent because he failed to request a pretrial transcript. However, *Jackson* is distinguishable from the instant case as the attorney in that case also committed numerous other prejudicial errors. Furthermore, the pretrial transcript in that case would have revealed information useful to the defense.

■■ Bynum argues that the transcript in the instant case would have revealed inconsistencies in Craig Saddler's pretrial and trial testimony regarding his lineup identification of Bynum. We disagree. At the pretrial hearing, Saddler testified that the police officer told him to take his time, and after Saddler made one identification, the police officer told him to look again. At trial, Saddler testified that the police officer only asked him whether he was positive of his identification after he made two selections and whether he had finished viewing the lineup. The minor inconsistencies in Saddler's statements as to what the police officer said to him would not have substantially impeached the credibility of Saddler. Thus, while we do not wish to diminish the value of trial transcripts (see, *e.g., United States v. Jonas* (7th Cir. 1976), 540 F.2d 566; *People v. Miller* (1966), 35 Ill. 2d 615, 221 N.E.2d 653; *People v. Russell* (1972), 7 Ill. App. 3d 850, 289 N.E.2d 106), we do not believe that the failure of Bynum's counsel to request the pre-trial transcripts proves incompetency under the facts presented in the case at bar.

Nor do we find that the defendant was prejudiced by his counsel's mistaken motion to dismiss, which was subsequently withdrawn,[3] or by his counsel's objection to Watts' motion to suppress Gary Smith's confession.[4] Although Smith's confession would have been detrimental to the defendant's case, the judge overruled the objection and suppressed the confession.

---

[3] Bynum's counsel made a motion to dismiss the case against Bynum because the indictment used an alias. Counsel was thereafter informed that the alias referred to one of the other defendants, and he subsequently withdrew this motion.

[4] Smith's confession named Joe Barrett, not Jonathan Bynum, as one of the offenders. Bynum's counsel argued against the suppression of the confession under the mistaken belief that the confession would clear his client of any wrongdoing. Bynum and Barrett were shown to be the same person.

After reviewing the record in the instant case, we find that under the totality of circumstances, the defendant was not deprived of effective assistance of counsel. We believe Bynum's counsel adequately prepared for trial and vigorously and competently represented the defendant.

The final issue, which is raised by both defendants, is that the trial court erred when evidence of other crimes was admitted.

At trial, evidence of other crimes was elicited through the testimony of Jerry Jagade, Donna Zorich and four Chicago police officers. The prosecutors also referred to the other crimes in opening and closing arguments. The crimes occurred at the Skylark Lounge, at 11 or 11:30 p.m. on July 20, 1978, and in a car occupied by Donna Zorich at 12:50 a.m. on July 21, 1978. The trial court ruled that the evidence of the other crimes was admissible for the limited purpose of identification and to show that the defendants were seen with a gun in the vicinity of and around the time of the Cooper robbery. The court further ruled, however, that the witnesses could not testify that the defendants had engaged in other robberies at those times.

■■ Generally, evidence of the commission of crimes other than those at issue is inadmissible unless the evidence is relevant to the main issue by serving to place the defendant in proximity to the time and place of the presently charged offenses or by establishing identity, and tending to prove design, motive or knowledge. (*E.g., People v. Manzella* (1973), 56 Ill. 2d 187, 306 N.E.2d 16, *cert. denied* (1974), 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644; *People v. Diaz* (1979), 78 Ill. App. 3d 277, 397 N.E.2d 148.) In determining the admissibility of evidence which informs a jury of a crime independent of or disconnected from the offense for which the defendant is being tried, it is necessary to weigh the probative value of such evidence against its probable prejudicial effect. *People v. Diaz.*

■■ In the case at bar, evidence of the other crimes was admissible to place Watts in the area of the Cooper robbery shortly before and after the occurrence. The evidence established that within an hour before or less than a mile away from the robbery in question, Watts was seen by Jerry Jagade with two men. The evidence further showed that approximately one-half hour after the instant offense, the Cooper automobile was found abandoned at 73d Place and Central Park. Five minutes later, Watts was seen by Donna Zorich approximately five blocks from where the Cooper automobile was found. Although Zorich testified in violation of the trial court's ruling that she saw Watts in the Pontiac in which she had been riding, we believe this testimony was proper because it verified that she had an opportunity to identify Watts. (See *People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448.) We further believe that the evidence regarding the theft and recovery of the Pontiac was admissible against both defendants to show the circumstances of their arrests for the Cooper robbery. See *People v. McKibbins* (1981), 100 Ill. App. 3d 787.

■■ As there was no evidence to connect Bynum with the robbery of the Skylark Lounge, evidence concerning that robbery was not admissible against Bynum. However, the erroneous introduction of evidence relating to other offenses does not per se constitute grounds for reversal (see *People v. Dallas* (1980), 85 Ill. App. 3d 153, 405 N.E.2d 1202); and where it is clear that the jury would have convicted the defendant despite the erroneous admission of evidence, reversal is not required (see *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290, *cert. denied* (1962), 368 U.S. 978, 7 L. Ed. 2d 440, 82 S. Ct. 484). We believe the jury in the instant case convicted Bynum based on his positive identification by Craig Saddler (*e.g., People v. Miller* (1981), 101 Ill. App. 3d 1029, 428 N.E. 2d 1038), and therefore we will not reverse his conviction.

Watts contends that he is entitled to a new trial because he was prejudiced by the State's violations of the trial court's orders prohibiting disclosure of his participation in other crimes. We disagree with this contention. For the reasons stated above evidence of Watts' participation in other crimes in the vicinity of and around the time of the Cooper robbery was admissible in his trial for this offense. Whatever prejudice may have resulted to Watts by this testimony would not have justified the suppression of that probative evidence.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

RIZZI, P. J., and WHITE, J., concur.