534 A.2d 297 (1987)
In the Matter of F.G., Appellant.
No. 85-1265.
District of Columbia Court of Appeals.
Argued November 17, 1986.
Decided November 25, 1987.
*298 Maureen T. Cannon, Public Defender Service, with whom James Klein and Jennifer P. Lyman, Public Defender Service, Washington, D.C., were on brief, for appellant.
Michele Giuliani, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., were on brief, for appellee.
Before NEWMAN and STEADMAN, Associate Judges, and NEBEKER, Associate Judge, Retired.[*]
NEBEKER, Associate Judge, Retired:
The only question presented in this appeal is whether appellant was entitled to a pretrial evidentiary hearing on his motion to suppress identification evidence. We hold that appellant's motion to suppress did not warrant an evidentiary hearing, because there was no material fact in dispute which, if decided in his favor, would form a basis for suppression of the identification. This being so, the trial court did not err in summarily denying the motion. Appellant's convictions of distributing phencyclidine (PCP) and marijuana in violation of D.C. Code § 33-541(a)(1) (1987 Supp.) shall therefore stand.

I
Pursuant to the Superior Court Juvenile Rules,[1] appellant timely filed a written pretrial motion to suppress his show-up identification *299 by an undercover narcotics officer. The motion to suppress, which was predicated on appellant's claim that evidence of the identification was inadmissible at trial because the procedure used by the police was unduly suggestive and therefore unreliable, averred pertinently as follows:
1. Respondent F.G. was arrested on April 12, 1985, for an alleged sale of PCP to an undercover police officer. The arrest of respondent occurred directly in front of his home at 1238 Wylie Street, N.E.
2. Following a purchase of PCP in the 1200 block of Wylie Street, N.E., an undercover police officer radioed a description of the seller to two other M.P.D. officers. Respondent was subsequently arrested by these two officers and held for a period of minutes. Respondent states, on information and belief, that while he was being held, the undercover police officer drove by and identified respondent as the person who had sold PCP.
3. A search incident to arrest revealed neither PCP nor the pre-recorded M.P.D. funds used by the undercover officer to make the buy.
The remaining two paragraphs of appellant's motion to suppress the identification contained legal arguments in the vein of a memorandum of law.[2]
In response, the government filed an opposition to the motion to suppress which set forth in greater detail the facts underlying appellant's identification and arrest. In its opposition, the government stated that the undercover officer was driving through the 1300 block of Wylie Street, N.E., an area notorious for drug trafficking, when he noticed appellant sitting on a parked car. The officer stopped and asked appellant if he had any "boat," street jargon for PCP-laced marijuana. Appellant replied that he did and then told the officer to park his car. After doing so, the officer approached appellant and asked whether he could purchase "two" for $25.00. When appellant responded that he had only one, the officer handed him a pre-recorded $20.00 bill for which he received a foil packet. The officer then left the scene and broadcast appellant's description and location to an awaiting arrest team. Approximately two minutes later, the arrest team located a man (appellant) fitting the description who was sitting on a car parked in the 1200 block of Wylie Street. They then escorted him to the corner of Thirteenth and Wylie Streets where, by a radio transmission, he was identified by the undercover officer as the man who had sold the narcotics.[3] Thereupon, appellant was arrested. The arrest occurred approximately four minutes after the illicit sale.
Appellant did not challenge the facts as stated by the government. And on such facts, the government asserted in its opposition that the on-the-scene identification of appellant by the undercover officer was admissible at trial. To this end, the government argued that the identification procedures employed were "fully in accord" with the standards enunciated by the Supreme Court in decisions such as Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 381-82, 34 L.Ed.2d 401 (1972), as well as those standards as articulated in local court decisions. And citing, e.g., Stovall v. Denno, 388 U.S. 293, 301-04, 87 S.Ct. 1967, 1972-74, 18 L.Ed.2d 1199 (1967), the government maintained appellant had the burden of establishing that the procedures used were impermissibly suggestive and so conducive to irreparable misidentification as to render the identification's use at trial a violation of due process.
*300 At a pretrial hearing on several defense motions, the motions court (Schwelb, J.) raised sua sponte the question whether appellant was entitled to an evidentiary hearing on his motion to suppress the show-up identification. During the extended colloquy which followed, appellant reiterated the challenges to the procedure he had made in writing, relying principally on his argument that show-up identifications, whether made by a police or civilian witness to the crime, are inherently suggestive and therefore unreliable. The court immediately disagreed, however, and pressed appellant for a more tenable basis for suppression of the identification. The court essentially reasoned that there was nothing unusual about this case  one involving a policeman's identification of a suspect, just minutes after an undercover buy, while driving by the suspect as he is being detained by other officers  which might distinguish it from the many police "ride-by" identification cases in which suppression had been routinely denied.
Appellant responded only that an evidentiary hearing was warranted in this case because of the inherent suggestivity of the identification procedure used, coupled with the fact that evidence might be elicited at a hearing which would prove the procedure was indeed impermissibly suggestive. With regard to the latter contention, appellant basically argued that without a hearing he would not know the "additional facts which distinguish this [case] from your average run-of-the-mill narcotics purchase and show-up."
The court ruled at the close of the hearing that appellant was not entitled to a pretrial evidentiary hearing on the admissibility of the show-up identification. The court followed its oral ruling with a written opinion and order. It may be summarized as follows.
After describing a typical undercover drug purchase and ride-by identification, the court, citing Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), noted that it is the common practice of courts in this jurisdiction to conduct pretrial evidentiary hearings on motions to suppress identification evidence. Nevertheless, the court then stated its view that judicial resources cannot accommodate evidentiary hearings "in every case of a prompt on-the-scene identification by an undercover officer." The court also observed that hearings in such cases provide an inappropriate mechanism for defense discovery and rarely, if ever, result in suppression of the identification.
On the merits, the court began its written analysis with a discussion of Watkins v. Sowders, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), in which the Supreme Court held that the due process clause of the fourteenth amendment does not require state criminal courts to conduct a hearing out of the jury's presence whenever there has been a challenge to the admissibility of identification evidence. While acknowledging that the Court in Watkins only went so far as to hold there is no constitutional right per se to such a procedure, and indeed suggested that the procedure "may often be advisable," id. at 349, 101 S.Ct. at 659, the court found the identification method used in this case less suggestive than that used in Watkins where an evidentiary hearing was deemed unnecessary.
The court then rejected appellant's thesis, advanced on the authority of Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969), that show-up identifications are unreliable because they are inherently suggestive. While conceding that show-ups are in fact suggestive, the court refused to accept the notion that this, in and of itself, makes them unreliable. The court noted that in Russell it was held that evidence of a prompt show-up identification by a civilian witness was admissible at trial. The motions court added that the reliability of a show-up identification is bolstered where, as here, the witness is a policeman who is far less likely than a civilian witness to be influenced by the fact that the suspect is in custody. Further, the court declared that "[i]t defies common sense to suggest that an undercover officer who has bought narcotics *301 from a man only minutes earlier should not be permitted to view the suspect at once." In this regard, the court observed, the allowance of immediate identifications by undercover officers would assure that the innocent are not mistakenly detained, as well as facilitate police efforts against the city's pernicious drug trade. The court also focused on the analogous case of People v. Leftwich, 82 Misc.2d 993, 372 N.Y.S.2d 888 (1975), in which it was also held that a pretrial suppression hearing was not required on a challenge to the admissibility of an undercover officer's show-up identification.
In concluding that appellant was not entitled to an evidentiary hearing on his motion to suppress, the court declared:
[W]here, as here, the respondent alleges no more than the conventional undercover sale and a ride-by identification by the undercover officer a short time thereafter, no pretrial evidentiary hearing need be held. The additional allegation that the police found no money or contraband on the respondent, while undoubtedly relevant to the substantive issue of guilt or innocence, does not indicate such unreliability as to make the requested pretrial hearing necessary or appropriate.
The evidence elicited at trial through the testimony of the undercover police officer was essentially consistent with the statement of facts contained in the government's opposition to the suppression motion. Besides describing the show-up identification itself, the officer identified appellant in court as the man who sold him narcotics. In announcing its verdict, the trial court credited, inter alia, the testimony of the undercover officer including that which pertained to appellant's show-up identification.

II.
The contention is made here that the motions court "abused its discretion" when it denied appellant's motion to suppress identification evidence without an evidentiary hearing. As with any material dispute of fact, the issue is not abuse of discretion in whether to hold a hearing. A hearing is required if the facts as asserted warrant the relief sought.
Appellant's argument is largely predicated on the observation that, in fashioning its ruling, the court considered factors of judicial economy, gratuitous defense discovery, and the usual futility of such motions, which appellant correctly maintains are extraneous to the issues presented. That the court's assertedly objectionable reliance on these factors is, however, the gravamen of appellant's claim on appeal is revealed in his brief. He prefaces his argument on the merits of the court's decision with the observation that the court, "[h]aving already laid a base coat of improper reasons for refusing to hear evidence, ... then endeavored [in its written opinion] to find a legal gloss for its decision"  "[s]canning the legal horizon with result-oriented glasses...."
Not only is this statement unbecoming, it is clearly belied by the court's oral and written rulings which we have undertaken to detail above for this very reason. It is one thing to contend that the rationale of the court's decision is flawed. Indeed, counsel would be remiss in failing to raise such a contention. However, it is quite another thing to imply that the court has, simply for appearance sake, disingenuously obscured a decision's improper foundation with "legal gloss" and result orientation. To us, counsel's words admit of no other meaning.[4]
Our examination of the court's oral and written rulings reveals that the requested suppression hearing was denied due to the lack of a material factual issue. Although, to be sure, the motions court weighed the problems inherent to pretrial evidentiary hearings, it did so in the context of deciding a motion to suppress in which the facts were established.
*302 The issue which controls this appeal, then, is whether the motions court correctly determined that appellant was not entitled to an evidentiary hearing because there was no genuine issue of material fact. In Duddles v. United States, 399 A.2d 59, 63 (D.C.1979), this court set forth what has become the standard for trial courts in deciding when a defendant is entitled to a suppression hearing:
[I]n order to justify a hearing, the defendant is obliged, in his definitive motion papers, to make factual allegations which, if established, would warrant relief (based on evidence discovered of the government and, if necessary, proffered from defendant's own view of the case). The federal courts have uniformly upheld this approach; allegations that are merely conclusional cannot suffice. [Citations omitted.]
Accord, Jackson v. United States, 420 A.2d 1202, 1206 (D.C.1979) (en banc) (adopting the Duddles standard); see id. at 1208 n. 5 (Nebeker, J., concurring in part).
Duddles involved a claimed fourth amendment violation. Yet, we see no reason why the Duddles test should not apply with equal force here, where a suppression hearing is sought instead for a claimed violation of the fifth amendment due process clause. Indeed, in Jackson, supra, this court, sitting en banc, reaffirmed the Duddles standard in the context of a challenge to the admissibility of identification evidence which was made, presumably, on due process grounds. 420 A.2d at 1205-06. See note 7, infra.
We are well aware of the authority which runs contrary to this view of the defendant's burden in seeking the suppression of identification evidence. See N. SOBEL, Eyewitness Identification §§ 9.1(b), 9.2 (2d ed. 1986), and cases cited therein. Such authority predominately adheres to the rule that once a defendant merely shows that pretrial identification procedures were suggestive, the burden shifts to the state to show that the identification was nonetheless reliable. Id. at § 9.2. We are also aware that the courts are divided on this issue. Id.; see 1 W. LAFAVE & J. ISRAEL, Criminal Procedure § 10.3(d), at 794 (1984), and cases cited therein. And although this court has yet to speak directly on the question,[5] our en banc holding in Jackson, supra, at least implicitly imposes on the defense the burden of factually establishing a substantial likelihood of irreparable misidentification. 420 A.2d at 1206 (citing Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). Accord, e.g., Hill v. Wyrick, 570 F.2d 748, 751-52 (8th Cir.) (to be entitled to evidentiary hearing, defendant must allege facts of impermissible suggestivity), cert. denied, 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978). Moreover, there is language in the seminal Supreme Court case of Stovall v. Denno, supra, suggesting that it is up to the defendant to "allege and prove" due process infirmities stemming from pretrial identifications. 388 U.S. at 299, 87 S.Ct. at 1971.
Appellant places great reliance on Clemons v. United States, supra, where it was stated:
Whenever the prosecutor proposes to make eyewitness identification a part of its case, the defense is entitled to know, through disclosure by the prosecution or by evidentiary hearing outside the presence of the jury, the circumstances of any pretrial identification.... Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether the in-court identification by the same eyewitness is violative of due process or the right to counsel.
133 U.S.App.D.C. at 34, 408 F.2d at 1237 (footnote omitted). However, there surely remained after Clemons the requirement that a movant allege in the first instance a sufficient factual basis for suppression in order to obtain an evidentiary hearing. *303 This is evident to some degree from the same court's later treatment of an analogous issue in United States v. Thornton, 147 U.S.App.D.C. 114, 454 F.2d 957 (1971), a decision we cited with approval in Duddles, supra. In Thornton, the court cautioned that evidentiary hearings on probable cause are not required "as a matter of course, but only upon factual allegations which, if established, would warrant relief." Id. at 124 n. 65, 454 F.2d at 967 n. 65 (citations omitted). In any event, regardless of what Clemons is viewed to hold, our en banc court has spoken more directly on the specific issue of what must be pleaded to obtain an evidentiary hearing on the admissibility of an identification. Jackson, supra, 420 A.2d at 1206. This directive, we believe, is well grounded. Indeed, even the dissenters in Watkins would require in accordance with due process "a hearing whenever a defendant proffers sufficient evidence to raise a colorable claim that police confrontation procedures were impermissibly suggestive." 449 U.S. at 359, 101 S.Ct. at 664 (Brennan, J., with whom Marshall, J., joined, dissenting) (emphasis added).
The dissenter here argues at length that appellant should not have been held to the standard of Duddles and Jackson because the show-up procedure that was employed was suggestive and appellant "had no access to facts enabling him to make the allegations concerning reliability which the Jackson test would require." Dissent op. at 307. But see note 7, infra. As we understand it, the dissent would allow defendants a pretrial hearing as of right where they merely allege that a covert show-up identification was made.[6] The basic flaw in this reasoning is revealed in the dissent's opening passage which, by reference to decisions of other courts, implores that the utmost caution be taken "to verify the accuracy of identification evidence before presenting it to the jury." Dissent op. at 306.
However, the admissibility of identification evidence is not tested against this standard. The accuracy of an identification does not require verification for it to be admissible, and aspects which undercut its credibility are generally considerations for the jury. The dispositive test of admissibility is whether
under all the circumstances of this case there is "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 [88 S.Ct. 967, 971, 19 L.Ed.2d 1247] (1968). Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.
Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977) (citation to Simmons in full). We reject the implicit premise of the dissent that show-up identifications are presumptively violative of due process. It may be that for burden of proof purposes warrantless searches and seizures are presumed unconstitutional, but nothing suggests the same to be true for "show-ups." Indeed, there are two acknowledged reasons for their presumed constitutionality: (1) to get a prompt and hence reliable identification; and (2) to release the innocent and expedite the criminal investigation. See Neil v. Biggers, supra, 409 U.S. at 198, 93 S.Ct. at 381-82 (the admission of evidence of a suggestive show-up confrontation, without more, does not violate due process).
Appellant, turning to case law from this court, contends that we explicitly sanctioned the procedures alluded to in Clemons in Miles v. United States, 483 A.2d 649, 655-56 n. 7 (D.C.1984), Johnson v. United States, 470 A.2d 756, 759 n. 1 (D.C. 1983), and Patterson v. United States, 384 A.2d 663, 668 n. 7 (D.C.1978). Appellant extracts more from these footnotes than is *304 there. Johnson and Patterson simply "encourage" trial courts to conduct an inquiry into the reliability of identification evidence when the issue is raised. More to the point, Miles states that this inquiry is "typically" made by the court in the context of a hearing outside the jury's presence. We do not read this language as creating an entitlement to an evidentiary hearing, either before or during trial, if the facts are not in dispute.
Finally, appellant submits that he was unduly prejudiced by the court's refusal to conduct a pretrial hearing. This conclusion is premised on two propositions: first, that he was without means of discovering the facts needed adequately to support his motion to suppress; and secondly, that the issue whether in fact the identification procedure violated due process, so as to require exclusion of the identification testimony, could not have been adequately or properly resolved by the trial court on the basis of evidence later elicited at trial. With regard to the latter point, appellant relies on the Superior Court's Juvenile Rule 47-I(e) which, he maintains, requires that all pretrial motions be heard by the Motions Section of the Juvenile Branch, not the judge to whom the case is certified for trial. According to appellant, this requirement is telling here because it "eliminates the difficulties inherent in requiring a [trial] judge to decide pretrial motions seeking the exclusion of evidence, and then asking that judge to put those proceedings out of his mind when subsequently determining a juvenile's guilt at trial." Alternatively, appellant argues that sound trial strategy did not permit him to develop through cross-examination of government witnesses a factual basis for suppression of the show-up identification. Appellant suggests that he was therefore faced with the dilemma of choosing between "his right to challenge identification evidence on due process grounds, and his sixth amendment right to present a defense."
These contentions are without merit. That appellant might not have had access, through discovery or otherwise, to evidence from which he might have properly moved for suppression before trial did not discharge his obligation to allege a sufficient factual foundation for the claim asserted. Our rejection of the same contention in Duddles v. United States, supra, 399 A.2d at 63 & n. 10, is controlling and need not be reexplained here.[7]
With respect to the argument centered on Juvenile Rule 47-I(e), we note that by the rule's very terms the requirement of a determination by the Motions Section may be avoided by the trial court assigned to the case "for good cause shown." Plainly, this condition would be met if the defense revealed through evidence adduced at trial, which could not have been discovered beforehand, a substantial likelihood of irreparable misidentification from the police procedures used. Moreover, as we have intimated above with our discussion of Clemons, supra, we are aware of no legal or practical barriers to the judicial determination during trial if necessary  and outside the presence of the jury, if there is one  of an adequately supported *305 motion to exclude identification evidence which could not have been raised properly before trial. See, e.g., Duddles, supra, 399 A.2d at 64 (under D.C. Code § 23-104(a)(2) (1973) (now id. (1981)), inter alia, motion to suppress must be made prior to trial unless defendant can show good cause for failure to do so); Smith v. United States, 295 A.2d 64, 65 n. 2 (D.C.1972) (motion to suppress should be entertained before trial absent exceptional circumstances), cert. denied, 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973). Contrary to what the dissent in this case suggests (Dissent op. at 308-309), our decision in Duddles did not foreclose on "law of the case" principles the mid-trial consideration of a motion to suppress which, for reasons beyond the defendant's control, was not decided on its merits before trial, but rather dismissed on its face. 399 A.2d at 64. This allowance, to be sure, is the exception and not the rule. Nevertheless, where the defendant has adequately explained his failure to raise before trial the facts adduced at trial which indicate the exclusion of evidence on constitutional grounds, law of the case does not bind the trial court to its earlier decision on the pleadings alone. See id. But the defendant cannot avail himself of this "good cause" exception if his effort is simply an attempt to relitigate a constitutional question which was, or might have been, decided fully and fairly before trial.[8]
Nor can it be said that facts relevant to suppression of the identification on due process grounds may not surface at trial. Reliability, qua verity, of the identification is very much a pertinent matter on the issue of guilt. Thus, evidence at trial will always expose any exceptional case where the issue of the admissibility of an identification on due process grounds is presented.
We also find groundless the remaining contention that a pretrial evidentiary hearing was required because appellant could not have been expected to develop a factual basis for suppression at trial through cross-examination without hindering his defense. In Watkins v. Sowders, supra, this argument was couched in terms of the defendant's inability to discredit an otherwise admissible pretrial identification by demonstrating before the jury the procedure's unreliability. 449 U.S. at 348, 101 S.Ct. at 658-59. The Supreme Court expressly rejected the argument. Id. at 348-49, 101 S.Ct. at 659. Acknowledging that "under our adversary system of justice, cross-examination has always been considered a most effective way to ascertain truth," the Court in Watkins declined to hold that the due process clause "inevitably requires the abandonment of the time-honored process of cross-examination as the device best suited to determine the trustworthiness of testimonial evidence." Id. at 349, 101 S.Ct. at 659 (footnote omitted). On this authority, appellant's claim must also fail. The purported inability of counsel to develop through cross-examination an adequate record for suppression, without compromising the defense, is not unlike the "predicament" perceived in Watkins, for each derives whatever strength it has from the reality of the trier of fact being made privy to information on the "trustworthiness of testimonial evidence." See id.
In conclusion, and for reasons set forth above, we hold that the motions court did not err in summarily denying appellant's motion to suppress the show-up identification.
Affirmed.
NEWMAN, Associate Judge, dissenting:
In Watkins v. Sowders, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), the Supreme Court held that the Constitution does not require a per se rule compelling a judicial determination outside the presence of the jury of the admissibility of identification evidence in every case. The Court noted, however, that the prudence of such hearings had been emphasized by many decisions in the Courts of Appeals, id. at *306 345 & n. 2, 101 S.Ct. at 657 & n. 2, and agreed that such a precedure "may often be advisable," and even, "[i]n some circumstances[] not presented here, ... constitutionally necessary." Id. at 349, 101 S.Ct. at 659.
Despite the holding in Watkins, many state courts have continued, as a matter of state law, to grant a hearing as of right whenever the admissibility of identification evidence is challenged.[1] These courts, recognizing the inherently suspect qualities of eyewitness identification evidence,[2] as well as its powerful impact on juries,[3] have appropriately concluded that the utmost caution must be taken to verify the accuracy of identification evidence before presenting it to the jury.
A concern for heavy caseloads and economy of judicial resources, however, has led other courts to establish certain minimum requirements of specificity which a defendant's allegations must meet in order for him to obtain an evidentiary hearing on a motion to suppress identification evidence. For the most part, the thresholds established have been minimal, requiring merely that defendant's allegations be "not frivolous," United States ex rel. Fisher v. Driber, 546 F.2d 18, 22 (3d Cir.1976); or "more than conclusory," Hill v. Wyrick, 570 F.2d 748, 751 (8th Cir.), cert. denied, 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978); or that they "allege a ground constituting legal basis for the motion," People v. Doyle, 134 Misc.2d 338, 510 N.Y.S.2d 987, 988 (1987) (by statute). Cf. Watkins, supra, 449 U.S. at 359, 101 S.Ct. at 664 (hearing should be mandated "whenever a defendant proffers sufficient evidence to raise a colorable claim" of impermissible suggestivity) (Brennan, J., dissenting).
A few courts have held defendants moving to suppress identification evidence to a slightly higher threshold. Analogizing from a test originating in Fourth Amendment jurisprudence, one federal circuit court has required that in order to obtain an evidentiary hearing, the defendant must allege facts which, if proven, will entitle him to relief. See, e.g., United States v. Poe, 462 F.2d 195, 197 (5th Cir.1972), cert. denied, 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed. 2d 83 (1973), citing United States v. One 1965 Buick, 392 F.2d 672, 678 (6th Cir. 1968) (motion to suppress evidence obtained pursuant to illegal search), vacated on other grounds, 402 U.S. 937, 91 S.Ct. 1602, 29 L.Ed.2d 105 (1971).[4] We have subscribed *307 to this analogy at least to some extent, borrowing this test which we articulated in Duddles v. United States, 399 A.2d 59, 63 (D.C.1979), a case which concerned a motion to suppress on Fourth Amendment grounds, and transplanting it to the context of a motion to suppress line-up evidence on due process grounds. Jackson v. United States, 420 A.2d 1202, 1206 (D.C.1979) (en banc).
The majority now seeks to further extend the test to cases in which the challenged identification procedure is a "show-up". It "see[s] no reason why the Duddles test should not apply with equal force here...." Maj. Op. at 302. I dissent. I see compelling reasons why the analogy should not be extended to this case.
A defendant is entitled to suppression of identification evidence if it is shown to be both (1) impermissibly suggestive, and (2) unreliable, given the totality of the circumstances. Paris v. United States, 515 A.2d 199, 207 (D.C.1986); Patterson v. United States, 384 A.2d 663, 665 (D.C.1978); see Stovall v. Denno, 388 U.S. 293, 301-02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). A requirement that a defendant's motion papers "make factual allegations which, if established, would warrant relief," Jackson, supra, 420 A.2d at 1206, necessarily imposes upon the defendant the burden of making some factual allegations as to both suggestiveness and reliability of the identification.[5]
This may be a reasonable requirement when the challenged procedure is a lineup, as it was in Jackson. At a lineup, the accused has a right to counsel, whose primary function is to observe the procedure so that facts indicating suggestivity and/or unreliability may be later proven at trial. Wade, supra note 2, 388 U.S. at 236-37, 87 S.Ct. at 1937-38. The accused is, in other words, privy to the facts which might form the basis of a challenge, and can allege them with some specificity in his motion papers.[6]
But the Jackson requirement is not a reasonable one when the challenged identification is the type of show-up which occurred here. F.G. had no right to the presence of counsel at the show-up. Glass v. United States, 395 A.2d 796, 805 (D.C. 1978); Russell v. United States, 133 U.S. App.D.C. 77, 81, 408 F.2d 1280, 1284, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). He was detained at a street corner while an undercover policeman drove by in an unmarked car and identified him. He could not see who was identifying him. He could not see how far away the identifying officer was, nor how fast the officer was driving when the identification was made; nor could he know if anything was obstructing the officer's field of vision at the time of the identification. Although F.G. made a sufficient allegation of suggestiveness simply by alleging that a show-up occurred,[7] he had no access to *308 facts enabling him to make the allegations concerning reliability which the Jackson test would require. His motion alleged that "[t]he procedure was unreliable because the undercover officer made the identification from a distance while sitting in a moving car." This is as much as can be reasonably expected of a defendant who has access neither to the facts surrounding the undercover officer's original observations nor the resulting show-up, and who is not entitled under Super.Ct.R. 16 to obtain additional facts regarding the identification.[8]
In a police drive-by show-up of this type, the accused will rarely be able to make the allegations of fact necessary under the Jackson test. Defendants moving to suppress evidence of such identification procedures will necessarily, under the majority's decision today, be subject to summary denial of their motions, without having been given the opportunity to elicit the necessary facts at an evidentiary hearing. When an accused is otherwise without the means to know if the identification procedure used by the police violated due process, a denial of his motion to suppress without benefit of a hearing must itself be a denial of due process.
Other courts have recognized this. In United States v. Allison, supra note 4, the Court of Appeals for the Ninth Circuit held that a defendant was not entitled to a hearing on his motion to suppress evidence of pretrial photo identifications, because his allegations were not "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim [was] ... presented." 414 F.2d at 410, citing Cohen, supra note 4, 378 F.2d at 761. The court was careful to point out, however, that "[i]t would be improper to apply the Cohen requirements strictly to a defendant who did not know the procedures followed by the government in exhibiting photographs to potential identification witnesses, and no doubt many defendants would fall in this category." Id. at 410-11. The court was able to affirm because it found that the appellant was not in this category, having been furnished by the government with all the details of the photo identifications.
Another court, looking at the same problem in terms of burdens of proof, see supra note 5, has stated:
There is a major difficulty ... with putting such a burden on the defendant in all cases. In many types of confrontations the defendant will be totally unaware of the fact that witnesses are trying to identify him. When this happens it may well be impossible for defendant to know who was present at the confrontation, what was said or what facts existed which might make it `unnecessarily suggestive.' ... Putting the burden of proof on defendant in these situations may well result in denying him procedurally a right which is purportedly granted substantively.
People v. Young, 21 Mich.App. 684, 176 N.W.2d 420, 425 (1970) (footnote omitted). Though we are concerned here not with the defendant's burden of persuasion, but with his burden of producing an initial quantum of factual evidence, the problem is the same: a court may not in fairness demand what is impossible for the defendant to obtain.
The majority maintains that a defendant is not prejudiced by his inability to adequately support a pretrial motion to suppress, because if evidence later adduced through cross-examination at trial reveals *309 that the procedures used by the police produced a substantial likelihood of misidentification, the defense can then move for a judicial determination of admissibility outside the presence of the jury, if there is one. Maj.Op. at 303. But ["t]his court has stated on several occasions that the decision on a pretrial motion to suppress becomes the law of the case," Duddles, supra, 399 A.2d at 64, and a new motion to suppress should not be entertained during trial absent exceptional circumstances. Smith v. United States, 295 A.2d 64, 65 n. 2 (D.C.1972), cert. denied, 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973); Bailey v. United States, 279 A.2d 508, 510 n. 2 (D.C. 1971).
The purpose of the law of the case doctrine is twofold. First, it is intended to expedite the trial and accord finality to pretrial rulings. "[A]bsent unusual circumstances, permitting reassertion of the pretrial motion will waste valuable time, relegate decisions on those motions to mere advisory or tentative opinions, and convert the motions hearings into nothing more than unpermitted depositions." Jenkins v. United States, 284 A.2d 460, 464 (D.C. 1971); see also United States v. Dockery, 294 A.2d 158, 163 (D.C.1972); Rouse v. United States, 123 U.S.App.D.C. 348, 351 n. 1, 359 F.2d 1014, 1017 n. 1 (1966) (McGowan, J., concurring).
More important, the doctrine is adjunct to our statutory scheme granting to the government the right to appeal rulings on motions to suppress, and providing that such motions be made before trial "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." D.C.Code § 23-104(a)(2) (1981). "[T]he timing of the motion is essential to this right.... [F]inality of most pretrial rulings on such motions will avoid the necessity of intratrial prosecution appeals under D.C.Code ... § 23-104(b) [1981]." Jenkins, supra, 284 A.2d at 464; see Dockery, supra, 294 A.2d at 163.
The majority, in its readiness to compromise the law of the case doctrine, ignores the intent of Congress in establishing the government's right to appeal motion rulings with minimal disruption of the proceedings. In an effort to preserve "efficient" summary dispositions of pretrial motions, the majority proposes a substitute procedure likely to create even greater inefficiencies. This is no solution to the problem of safeguarding the defendant's due process rights. The trial judge may best protect those rights by conducting, upon motion, a pretrial evidentiary inquiry into the suggestivity and reliability of the identification. Miles v. United States, 483 A.2d 649, 655-56, n. 7 (D.C.1984); Johnson v. United States, 470 A.2d 756, 759 n. 1 (D.C.1983); Patterson, supra, 384 A.2d at 668 n. 7; Clemons v. United States, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). When the identification at issue is the result of a show-up of the type conducted here, the hearing will often be the defendant's only means of uncovering facts to which he has no other access. By holding that a defendant may be denied a hearing because he is not already in possession of those facts, the majority throws "Catch 22" in the way of the defendant's due process rights.[9]
NOTES
[*] Judge Nebeker was an Associate Judge on this court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1987.
[1] See Super.Ct.Juv. Rules 12(b)(3), 47, and 47-I(c).
[2] In the motion to suppress, appellant also sought to exclude oral statements he had made to the arresting officers. He raised the alternative grounds that the statements were involuntarily made and elicited by the police without the necessary Miranda warnings. Appellant eventually withdrew this aspect of his motion on the representation of the government that it would not use the statements in its case-in-chief.
[3] Appellant did suggest in his motion to suppress that he was identified as the officer drove by where he was being held on the street. This additional allegation is not material to the admissibility of the challenged identification.
[4] It is hoped that counsel in this case reads our comments in their intended constructive light. We maintain our high regard for the members of the Public Defender Service who, time and again, render exemplary representation without recourse to hyperbole.
[5] See generally Crews v. United States, 389 A.2d 277, 289 (D.C.1978) (en banc) (discussing burdens in context of fourth amendment), rev'd on other grounds, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
[6] We think it is significant that legislation has not been enacted in the District of Columbia requiring evidentiary hearings on suppression motions as of right. Nor has this court promulgated a rule establishing such a right. See Dissent op. at 306 n. 1.
[7] With regard to the difficulty of discovering facts upon which to base a pretrial motion to suppress, we perceive no difference between fourth and fifth amendment constitutional claims. Hence, Duddles cannot be meaningfully distinguished on this ground. The dissenter's belief that there is a distinction worthy of a new rule (e.g., Dissent op. at 307 n. 6 & 307-308 n. 8) is based on a rather selective look at fourth amendment jurisprudence. Countless fourth amendment challenges have been made to the admission of evidence obtained through illegal search and seizure in cases where the defendant was not present at the time and place of the search and seizure. In most instances, these defendants would have had no less difficulty discovering the facts upon which to move for suppression than the defendant here who moves to suppress a ride-by identification on fifth amendment grounds. Duddles, therefore, is apposite. Moreover, the distinction perceived by the dissenter is premised on the argument that "[w]hen the identification at issue is the result of a show-up of the type conducted here, the hearing will often be the defendant's only means of uncovering facts to which he has no other access." Dissent op. at 309. But it is quite settled that a pretrial evidentiary hearing should not be conducted simply for the purpose of discovery. See Duddles, supra, 399 A.2d at 62.
[8] Of course, if the defendant prevails at trial on a motion to suppress, the government may appeal and thereby challenge the ruling on its merits as well as on the question whether good cause was shown for its late consideration. See D.C.Code § 23-104(b) (1981).
[1] See, e.g., State v. Smith, 146 Ariz. 491, 707 P.2d 289, 294 (1985); State v. Stolp, 133 Ariz. 213, 650 P.2d 1195, 1196 n. 1 (1982) (en banc); Coralin v. State, 377 N.W.2d 14, 18-19 (Minn.1985) (hearing required by rule); Commonwealth v. Williams, 323 Pa.Super. 512, 470 A.2d 1376, 1383 (1984) (required by rule); Carter v. State, 428 So.2d 751, 753 (Fla.App.1983) (required by rule); People v. Bynum, 102 Ill.App.3d 461, 58 Ill.Dec. 168, 430 N.E.2d 110, 114 (1981); People v. Prast, 114 Mich.App. 469, 319 N.W.2d 627, 634 (1982); State v. Swiger, 169 W.Va. 724, 289 S.E.2d 497, 499 (1982); see also Brown v. Commonwealth, 564 S.W.2d 24, 28-29 (Ky.App.1978) (pre-Watkins; hearing required by state law).
[2] "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: `What is the worth of identification testimony even when uncontradicted? The hazards of such testimony are established by a formidable number of instances in the records of English and American trials....' The Case of Sacco and Vanzetti 30 (1927)." United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) (footnote omitted).
[3] "Juries seem most receptive to, and not inclined to discredit, testimony of a witness who states that he saw the defendant commit the crime.

`[E]yewitness testimony is likely to be believed by juries, especially when it is offered with a high level of confidence, even though the accuracy of an eyewitness and the confidence of that witness may not be related to one another at all. All the evidence points rather strikingly to the conclusion that there is almost nothing more convincing than a live human being who takes the stand, points a finger at the defendant, and says "That's the one!"'"
Watkins, supra, 449 U.S. at 352, 101 S.Ct. at 661 (Brennan, J., dissenting) (emphasis in the original), citing E. Loftus, Eyewitness Testimony 19 (1979).
[4] See also United States v. Allison, 414 F.2d 407, 410 (9th Cir.1969) (allegations must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim [was] ... presented") (citing Cohen v. United States, 378 F.2d 751, 761 (9th Cir.1967), a Fourth Amendment case), cert. denied, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1969).
[5] The majority recognizes that the Jackson rule alters, at least to some extent, the usual burden of proof in identification cases. Maj.Op. at 302. "Most courts have held that once the defendant shows that pretrial identification procedures were suggestive, the burden shifts to the state to show by clear and convincing evidence that the identification was nonetheless reliable." N. Sobel, Eyewitness Identification § 9.3, at 9-12 (2d ed. 1986). See People v. Cooks, 141 Cal.App. 3d 224, 190 Cal.Rptr. 211, 270 (1983), cert. denied, 464 U.S. 1046, 104 S.Ct. 718, 79 L.Ed.2d 180 (1984); State v. True, 464 A.2d 946, 950 (Me.1983); see also cases cited in N. Sobel, Eyewitness Identification, supra, at 9-12 n. 61. To place upon the defendant "the burden of factually establishing a substantial likelihood of irreparable misidentification," Maj.Op. at 302 citing Jackson, supra, is to shift the burden of proof with respect to reliability, in part, from the government to the defendant. This is especially unfair where the defendant is not privy to, and cannot obtain by discovery, the information necessary to sustain the burden. See text infra.
[6] Such is the case also in the Fourth Amendment context with which we dealt in Duddles, supra. An accused is present when an illegal arrest is made, when he or his environs are searched illegally, when a Miranda violation occurs, or when he is compelled to give a confession involuntarily. In addition, he may discover any warrant used by the police under Super.Ct.Crim.R. 16.
[7] "Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive." Russell, supra, 133 U.S.App.D.C. at 81, 408 F.2d at 1284 (footnote omitted). Police officers, though perhaps somewhat less likely than the untrained observer to make an erroneous identification, are not immune from the suggestivity inherent in such confrontations. See P. Wall, Eye-witness Identification in Criminal Cases 14 (1965).
[8] I find incomprehensible the majority's bald statement, accompanied by no reasoned discussion, that "[w]ith regard to the difficulty of discovering facts upon which to base a pretrial motion to suppress, we perceive no difference between fourth and fifth amendment constitutional claims. Hence, Duddles cannot be meaningfully distinguished on this ground." Maj.Op. at 304 n. 7. As I have tried to explain, the defendant seeking to suppress evidence on fourth amendment grounds has considerably more access to the necessary facts than does the subject of a drive-by show-up such as occurred here. See supra note 6.
[9] In addition to dissenting from the majority's opinion, I dissent from its criticism of defense counsel for the latter's characterization of the trial court's written opinion. See Maj.Op. at 302. To my mind, the statement in counsel's brief to which the majority objects does not accuse the trial court of disingenuousness; it does accurately depict the court's opinion as being result-oriented and based upon improper reasoning. For the reasons stated in my dissent, I find the majority opinion of this court similarly flawed.