In re F.G., Appellant.

No. 85–1265.

District of Columbia Court of Appeals.

Argued En Banc May 11, 1989.
Decided June 26, 1990.

Jennifer P. Lyman, Public Defender Service, with whom James Klein and Maureen T. Cannon, Public Defender Service, were on the briefs, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the original brief was filed, Frederick D. Cooke, Jr., Corporation Counsel at the time the petition for rehearing was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager and Michele Guiliani, Asst. Corp. Counsel, were on the briefs, for the District of Columbia.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Timothy J. Reardon III, Principal Asst. U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, were on the brief, for U.S. as amicus curiae.

Before ROGERS, Chief Judge, NEWMAN, FERREN, BELSON, TERRY, and STEADMAN, Associate Judges, and MACK, Senior Judge.*

On Rehearing En Banc

FERREN, Associate Judge:

Appellant was adjudicated delinquent for distribution of phencyclidine (PCP) and marijuana, D.C.Code § 33–541(a) (1988). He contends the trial court erred in refusing to conduct a pretrial evidentiary hearing on his motion to suppress evidence of his showup identification by an undercover police officer. We agree. Under our supervisory power over the administration of criminal justice in the District of Columbia,[1] we hold that every defendant is entitled to an evidentiary hearing on a motion to suppress a showup identification unless it clearly appears from informal discovery that the defendant is seeking a hearing in bad faith. We therefore reverse the adjudication and remand for an evidentiary hearing on the motion to suppress.[2]

I.

Following an undercover purchase of marijuana laced with PCP on April 12, 1985, Officer Gerald Awkard radioed the location and description of the seller to two other officers of the Metropolitan Police Department. The description identified the seller as wearing a white T-shirt, dark blue sweat pants, and light blue tennis shoes. The two officers found appellant sitting on a car directly in front of his home. They detained appellant until Officer Awkard drove by and identified appellant as the person who had sold him the drugs about four minutes earlier. A search incident to arrest uncovered neither PCP nor the pre-recorded funds used by Awkard to make the purchase.

In his pretrial motion to suppress Awkard's identification testimony, appellant argued the showup identification was unduly suggestive and unreliable. Appellant alleged no unusual facts about his particular identification, however; rather, he argued that showup identification procedures are

---

* Judge MACK was an *Associate Judge* of this court at the time of argument. She was commissioned as a *Senior Judge* on December 1, 1989.

1. For some previous applications of our supervisory power, see, *e.g., Jenkins v. United States,* 541 A.2d 1269, 1273 & n. 1 (D.C.1988) (relying on supervisory power to establish non-constitutional standard for abuse of discretion at *voir dire* for bias as to police testimony); *In re Kelley,* 433 A.2d 704, 707–10 (D.C.1981) (en banc) (invoking inherent supervisory power to require prosecutor to make factual showing before court will enforce grand jury lineup order); *Winters v. United States,* 317 A.2d 530, 532–33 (D.C.1974) (en banc) (exercising "superintendent responsibility" in adopting for future use charge for courts to give to deadlocked juries in lieu of the *Allen* charge).

2. A division of this court previously considered this appeal, *In re F.G.,* 534 A.2d 297 (D.C.1987). After the case was argued on rehearing before a reconstituted division, the full court decided *sua sponte* to vacate the original division opinion and rehear the case en banc. 553 A.2d 1246 (D.C.1989).

inherently suggestive. At a pretrial hearing on the motion, appellant maintained he was entitled to an evidentiary hearing because only through cross-examination of the government's witnesses could he discover additional facts which might support the motion to suppress.

The motions court denied appellant's motion without an evidentiary hearing. In a written opinion supporting its ruling, the court first noted that it is common practice in this jurisdiction to hold a pretrial evidentiary hearing on a motion to suppress an identification. 113 Daily Wash.L.Rptr. 1445, 1451 (June 4, 1985). The court then emphasized, however, both the extreme unlikelihood of success for such motions and the strain on judicial resources caused by evidentiary hearings. *Id.* The court relied substantially on *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), in which the Supreme Court held that the due process clause does not require a hearing out of the jury's presence whenever a defendant claims an identification was obtained improperly. 113 Daily Wash.L.Rptr. at 1451. While the court acknowledged that showup identifications are inherently suggestive, it stressed the reliability of on-the-scene identifications by trained police officers and concluded that any suggestivity was not impermissible. *Id.* at 1451–52. The court added that appellant was not prejudiced from its denial of his motion without a hearing because appellant could attack the reliability of the identification at trial. *Id.* at 1452.

## II.

■■■■ In *Jackson v. United States*, 420 A.2d 1202 (D.C.1979) (en banc), we considered the question whether the fifth amendment requires an evidentiary hearing on a motion to suppress a lineup identification. We adopted the test established in *Duddles v. United States*, 399 A.2d 59 (D.C.1979), where we had concluded that, in order to justify a hearing on a fourth amendment suppression motion,

> the defendant is obliged, in his [or her] definitive motion papers, to make factual allegations which, if established, would warrant relief (based on evidence discov-

ered of the government and, if necessary, proffered from defendant's own view of the case).

*Jackson*, 420 A.2d at 1206 (quoting *Duddles*, 399 A.2d at 63).

The government believes there is no relevant distinction between a showup identification and a lineup identification and, therefore, contends the *Duddles–Jackson* test should apply here—*i.e.*, the defendant should have to make factual allegations warranting relief before an evidentiary hearing is required. We disagree. *Duddles* expressly premised its test on the availability to the defendant of evidence about the government's actions "discovered [from] the government" or "proffered from the defendant's own view of the case." *Id.* In challenging a showup identification, however, a defendant has little access to the evidence necessary to make factual allegations warranting relief, in contrast with the typical lineup identification and fourth amendment seizure situations.

As Judge Newman noted in his dissent in this case at division:

> At a lineup, the accused has a right to counsel, whose primary function is to observe the procedure so that facts indicating suggestivity and/or unreliability may be later proven at trial. [Citation omitted.] The accused is, in other words, privy to the facts which might form the basis of a challenge, and can allege them with some specificity in his motion papers.

*In re F.G.*, 534 A.2d 297, 307 (D.C.1987) (Newman, J., dissenting). Such is the case also in most typical fourth amendment contexts. As Judge Newman explained:

> An accused is present when an illegal arrest is made, when he or his environs are searched illegally, when a *Miranda* violation occurs, or when he is compelled to give a confession involuntarily. In addition, he may discover any warrant used by the police under Super.Ct. Crim.R. 16.

*Id.* at 307 n. 6. In this case, in contrast, F.G. had no right to counsel at the showup. Rather,

> [h]e was detained at a street corner while an undercover police [officer] drove by in

an unmarked car and identified him. He could not see who was identifying him. He could not see how far away the identifying officer was, nor how fast the officer was driving when the identification was made; nor could he know if anything was obstructing the officer's field of vision at the time of the identification.

*Id.* at 307. As a result, even if he had a meritorious claim, appellant would probably not be in a position—absent guaranteed, adequate discovery or an evidentiary hearing for which he could subpoena government witnesses—to make factual allegations which, if established, would warrant suppression of the showup identification.

In *Clemons v. United States,* 133 U.S. App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968) (en banc), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), the United States Court of Appeals for the District of Columbia Circuit stated:

> Whenever the prosecution proposes to make eyewitness identification a part of its case, the defense is entitled to know, through disclosure by the prosecution or by evidentiary hearing outside the presence of the jury, the circumstances of any pre-trial identification. [Footnote omitted.]

At oral argument, the government maintained that informal discovery is normally available from the prosecutor sufficient to reveal the type of information necessary to prepare—or in good faith to forego—a suppression motion satisfying the *Duddles–Jackson* test. Unlike the dissent,[3] we are unwilling to assume that the prosecutor's offer of informal discovery will provide in every case enough relevant information for proper evaluation of a possible motion to suppress a showup identification. The government has provided no guarantee that adequate discovery will be available with the kind of certainty attributable to

information discoverable as of right. The government has not conceded, for example, that it would be willing to disclose before trial the names of police witnesses. In short, the government has not proffered a guaranteed discovery formula on which a defendant—or this court—assuredly can rely. Accordingly, we cannot be confident that a defendant subject to a showup identification will have the material essential for a timely pretrial *Duddles–Jackson* motion. Absent such guaranteed discovery, the only proper course is to guarantee a pretrial evidentiary hearing for a defendant's challenge to a showup identification at which government witnesses are made available.

The government worries that an evidentiary hearing will turn into a burdensome fishing expedition opening the "floodgates of discovery." In view of its assurances that the prosecutor will volunteer adequate discovery, this concern is ironic—unless the government intends to hold back. In any event, the "floodgates" argument will wither away if the government volunteers through informal discovery enough information to preclude the appropriateness of a suppression motion, or if the trial court exercises proper control—strictly limiting any hearing to facts pertaining to suggestivity and reliability of the showup identification.

The government also argues that a defendant's need can be met by exploring the showup identification at trial. To the extent the government is arguing that cross-examination of government witnesses at trial will suffice, we disagree. That approach may force a defendant who wishes to take the stand in rebuttal to choose between testifying in support of the motion to suppress and invoking the fifth amendment right to silence—a conflict that cannot arise when the suppression motion is resolved before trial. *See Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (finding it

---

3. The dissent apparently agrees that applicability of the *Duddles–Jackson* test presupposes the availability of adequate discovery, but does not believe an evidentiary hearing was required in this case because of the government's assurances about informal discovery. See *post* at

730 ("We were advised at oral argument that information of a type relevant here is normally available from the prosecutor's office. Hence, we think the trial court could properly conclude here that there was no purpose to be served in holding a hearing.").

"intolerable that one constitutional right should have to be surrendered in order to assert another" and therefore holding that defendant's testimony at fourth amendment suppression hearing may not be admitted against defendant at trial on issue of guilt unless defendant makes no objection).[4] Perhaps, on the other hand, the government means that such a defendant will be entitled to a mid-trial hearing, outside the presence of the jury, at which the privilege against self-incrimination will not be waived for purposes of the trial itself. If so, then this case is not about whether a defendant is entitled to a hearing; rather it is about when that hearing should take place. In that case, it makes little sense to argue that it is more efficient to hold evidentiary hearings mid-trial than pretrial, in light of the fact that any challenge at trial would interrupt proceedings before the jury. This interruption would be especially serious if the government were to lose and file a mid-trial appeal.[5] Thus, "[i]n an effort to preserve 'efficient' summary dispositions of pretrial motions," the government "proposes a substitute procedure likely to create even greater inefficiencies." *In re F.G.*, 534 A.2d at 309 (Newman, J., dissenting).

### III.

One solution would appear to suit everyone's needs: an evidentiary hearing as of right immediately before trial when all witnesses are present, unless it clearly appears from informal discovery that the defendant is seeking a hearing in bad faith.[6] This solution would typically satisfy the defendant's need for a hearing, the government's need to protect its witnesses, and the court's need for efficiency. This approach, of course, would not preclude an earlier evidentiary hearing, in the trial court's sound discretion, when circumstances warrant.

In sum, all members of the court appear to agree that a criminal defendant is entitled to all available information necessary to make an informed decision whether a showup identification is subject to effective challenge. Rather than rely solely on the willingness of individual prosecutors to make such information available informally before trial in a particular case—an approach which provides no guarantee of adequacy and consistency—we conclude, as elaborated above, that appellant was entitled to an evidentiary hearing on his motion.

*Reversed and remanded.*

STEADMAN, Associate Judge, with whom BELSON and TERRY, Associate Judges, join, dissenting:

Forming the background in this case are the due process safeguards established by

---

**4.** The dissent's "difficulty" with this rationale, see *post* at 730–731 n. 2, appears to be a disagreement with the Supreme Court's decision in *Simmons.* Its citation to *Bourn v. United States,* 567 A.2d 1312, 1314 (D.C.1989), is inapposite because the question in *Bourn* was whether a defendant's previous testimony at a suppression hearing could be used for impeachment purposes at trial, *i.e.,* used after the defendant had waived the fifth amendment right to silence. Nothing we have said here would preclude the use of a defendant's suppression hearing testimony for impeachment purposes at trial, once the fifth amendment privilege has been waived. Rather, we are saying that a defendant cannot be put in a situation where testifying in support of a suppression claim *necessarily forces* a waiver of the fifth amendment right to silence at trial. That is exactly the situation the Supreme Court found "intolerable" in *Simmons.* 390 U.S. at 394, 88 S.Ct. at 976.

**5.** Under D.C.Code § 23–104(e) (1989), we must hear argument on such an appeal within forty-eight hours and must render a decision within forty-eight hours of argument. In these admittedly rare cases, therefore, not only is an impaneled jury held "in limbo" for ninety-six hours, but we are forced to make the sort of hurried decision that appellate courts do best to avoid.

**6.** The argument that evidentiary hearings on all motions to suppress showup identifications will overburden judicial resources is belied by the fact that a number of state courts operate under a system where pretrial evidentiary hearings are required, either by rule or by caselaw, on a much broader category of motions to suppress evidence. *See, e.g., Carter v. State,* 428 So.2d 751, 753 (Fla.Dist.Ct.App.1983) (rule requires pretrial hearing on motions to suppress evidence); *Coralin v. State,* 377 N.W.2d 14, 18 (Minn.1985) (rule requires omnibus pretrial hearing); *Commonwealth v. Williams,* 323 Pa. Super. 512, 524–26 & nn. 15 & 16, 470 A.2d 1376, 1383 & nn. 15 & 16 (1984) (rule and caselaw require pretrial hearing on challenge to admissibility of identification).

the Supreme Court governing the admissibility of identification testimony by an eyewitness, specifically the requirement that a pretrial identification be suppressed by the court where the identification process was such as to " 'give rise to a very substantial likelihood of irreparable misidentification.' " *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). In our jurisprudence, following the analysis set forth in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), we have developed a two-step process for making this inquiry:

"(1) Was the identification procedure 'unnecessarily suggestive and conducive to irreparable misidentification'?

(2) If so, given the 'totality of the circumstances,' was the resulting identification reliable nevertheless?"

*Patterson v. United States*, 384 A.2d 663, 665 (D.C.1978) (citations omitted); *see also Henderson v. United States*, 527 A.2d 1262, 1267 (D.C.1987).

A foundation of appellant's argument here is that since showups are inherently suggestive, defendants should be entitled to a pretrial hearing in such cases in order to determine the identification's reliability. This assertion, however, fails to take into account the nature of the immediate post-crime showup involved here. We have repeatedly noted that any suggestivity inherent in such a showup is offset by its high degree of reliability. *See, e.g., In re B.E.W.*, 537 A.2d 206, 207 (D.C.1988) (" 'an immediate on-the-scene confrontation has uniquely powerful indicia of reliability which more than counterbalance any suggestivity, absent special elements of unfairness[;] . . . something more egregious than mere custodial status is required in order to establish such special unfairness' " (quoting *Singletary v. United States*, 383 A.2d 1064, 1068 (D.C.1978))). As the court explained in *United States v. Washington*, 144 U.S.App.D.C. 338, 342, 447 F.2d 308, 312 (1970):

The ordinary on-the-scene confrontation also has great merit in that it operates at a time when the events and facts are fresh in mind and the accused ordinarily has no opportunity to change his clothing or personal appearance. All this is conducive to a high degree of accuracy in a form of identification that can at best be difficult when memories have been blurred by the passage of time and alleged suspects drastically change their appearance. Certainly, identifications conducted on the scene may contain certain elements of suggestiveness but this point can be argued to the jury.

*See also Jones v. United States*, 277 A.2d 95, 97–98 (D.C.1971) (quoting *Washington, supra*).

The above-cited cases involved prompt post-crime showups where the accused was presented to a complaining witness who had just been the victim of a fleeting violent crime. In the instant case, the indicia of reliability are even more heightened in that, as the trial court pointed out, "the person making the identification was a professional police officer whose function was to observe the individual who sold him drugs." In participating in the criminal act, the officer had every expectation of being called upon to make a showup identification within a few minutes and would conduct himself so as to be ready for that task.

Indeed, the special nature of the showup involved here is revealed by the line of cases from the state of New York that refuses to even characterize the confrontation as an "identification." Rather, they reason, it is simply a confirmation by the undercover officer that the "right person" has been arrested. *See, e.g., People v. Doherty*, 136 Misc.2d 164, 167, 518 N.Y.S.2d 78, 80 (N.Y.Sup.Ct.1987) ("what occurred was clearly a confirmation that the right man had been arrested and not an identification within the meaning of *Wade* [*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ]").

We thus fail to see how such a showup can be presumptively violative of due process or otherwise in itself trigger a right to a full hearing. To the contrary, the nature of a prompt post-crime showup involving a

trained police officer appears manifestly not to be "unnecessarily suggestive and conducive to irreparable misidentification," *Patterson, supra*, 384 A.2d at 665 (quoting *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)), at least absent some "special elements of unfairness." *Russell v. United States*, 133 U.S.App.D.C. 77, 81, 408 F.2d 1280, 1284, *cert. denied*, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

Appellant asserts that without a hearing he has no means to ascertain the existence of any "special elements of unfairness." But this does not totally reflect the realities. In its opposition to appellant's motion for a suppression hearing, the government provided further detail concerning the overall transaction, which gave no indication that it was other than routine.[1] Moreover, the government does not appear to have refused to respond to a specific request by appellant for more information as to some element of the process that might make it impermissibly suggestive or differentiate it from the norm. Nor did appellant present to the court an articulable basis for concern regarding some special aspect of the identification process.

Appellant urges that this court not "overlook" *Clemons v. United States*, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), where it was stated:

> Whenever the prosecution proposes to make eyewitness identification a part of its case, the defense is entitled to know, through disclosure by the prosecution or by evidentiary hearing outside the presence of the jury, the circumstances of any pretrial identification.

Any suggestion, however, that this passage offers support for the view that defendants are somehow entitled to pretrial evidentiary hearings on suppression motions as a matter of course is not supported by *Clemons;* the quoted language itself presents as a fully equal alternative "disclosure by the

prosecution." *Id.* We were advised at oral argument that information of a type relevant here is normally available from the prosecutor's office. Hence, we think the trial court could properly conclude here that there was no purpose to be served in holding a hearing. Not only did appellant fail to assert facts "which, if established, would warrant relief," *Duddles v. United States*, 399 A.2d 59, 63 (D.C.1979), he failed even to point to some unusual element of the identification process here which might fairly raise the possibility of "a very substantial likelihood of irreparable misidentification," *Neil, supra*, 409 U.S. at 197, 93 S.Ct. at 381, so as to require further factual exploration.

As the majority acknowledges, we do not deal here with any constitutional command. *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981). Instead, the opinion invokes our "supervisory power" to impose a procedural straitjacket requiring a pretrial hearing whenever the defense is dissatisfied with whatever information is provided by the prosecution. Whatever the source and scope of this supervisory power may be, however it may differ from our ordinary responsibility to apply rules of law to matters appealed to us, and whether with respect to the matter before us appellate or trial judges are better situated to make such determinations, the concept seems to focus on dealing with matters as they in fact exist.

We are presented here with assertions that in fact adequate information is made available to ensure that hearings may be directed by the trial courts where reasonable concern exists of a "very substantial likelihood of irreparable misidentification." It seems strange, then, to postulate that such information may not in each and every case be available because of the absence of a "guaranteed discovery formula," and go on to require a hearing whenever desired by a defendant, absent "bad faith."[2] It would be time enough, follow-

---

1. The information in the government's opposition related to the details surrounding the undercover purchase and the opportunity to observe the defendant.

2. In any event, I have some difficulty with the suggestion that one rationale for permitting a pretrial hearing is to resolve a conflict between testifying and remaining silent at trial. "[A]n

ing an affirmance in the case before us, to deal in the future with questions of the scope of the duty, if any, imposed upon an unwilling prosecution to provide showup details.

The majority opinion deals with an unproven problem by requiring a rigid procedure which, it might be fairly predicted (as did the trial judge), will result in considerable additional expenditure of time and effort by all those involved in the trial process with virtually no difference in outcome. Assuming such is the province of an appellate court, this does not seem a particularly wise exercise of management supervision.

impermissible burdening of rights is not shown by a mere finding that a choice imposed upon the defendant may have a 'discouraging effect on the defendant's assertion of his trial rights.' "

*Bourn v. United States,* 567 A.2d 1312, 1314 (D.C.1989) (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973)).