909 A.2d 650

**Kevin Cornell JONES**

v.

**STATE of Maryland.**

**No. 120 Sept. Term, 2005.**

Court of Appeals of Maryland.

Oct. 18, 2006.

Amy E. Brennan, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, MD, for Appellant.

Jeremy M. McCoy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, Judge.

This case concerns a motion to suppress a photographic array displayed by the police to a witness in a criminal case and the proper procedure to be employed in the circuit court in conducting a motions hearing. The issue presented is whether the Circuit Court for Montgomery County erred in refusing to allow defense counsel at the motions hearing to call the detective who presented the photo array in order to

establish that the photo array procedure was unduly suggestive and should be suppressed. We shall hold that the court erred in not permitting defense counsel to call the witness. Appellant raises also the sufficiency of the evidence with respect to the second degree burglary conviction. We shall hold that the evidence was insufficient to establish that a breaking occurred, a necessary element of the offense, and accordingly, we shall reverse.

## I.

Appellant was indicted by the Grand Jury for Montgomery County in a five count indictment charging burglary in the first degree, theft, burglary in the second degree, burglary in the first degree, and burglary in the fourth degree.[1] All charges related to a series of thefts at the Academy of the Holy Cross in Kensington, Maryland. He proceeded to trial before a jury and was convicted of second degree burglary, Md.Code (2002, 2004 Cum.Supp.), § 6–203 of the Criminal Law Article.[2] The following facts were elicited at trial.

Several nuns employed at the Academy of the Holy Cross reported that money had been stolen from their rooms at the convent on different dates. Appellant was charged with several offenses related to these reports and proceeded to trial. One of the offenses for which appellant was charged related to events which occurred on June 30, 2004. On that date, two employees of the Academy of the Holy Cross, Marcia Fuoss and Erin Fristoe, saw appellant inside school premises. Ms.

---

**1.** Appellant filed a motion to sever counts in the indictment. The court severed the theft charge and appellant proceeded to trial on the remaining charges. The court granted a motion for judgment of acquittal on Count IV, fourth degree burglary. The jury returned a not guilty verdict on Count I, first degree burglary, guilty on Count II, second degree burglary, and no verdict on Count III, first degree burglary. Appellant then entered a guilty plea to Count III, as amended, to theft. The State entered a *nolle prosequi* to the severed theft charge.

**2.** Unless otherwise noted, all subsequent statutory references herein shall be to Md.Code (2002, 2004 Cum.Supp.) of the Criminal Law Article. The statute has not been amended since 2004 and the current version is identical.

Fristoe initially witnessed appellant leaving Ms. Fuoss' office. After Ms. Fuoss learned that appellant had been in her office, she confronted appellant in the hallway. She asked appellant if she could "help him, and who he was looking for." Ms. Fuoss testified that appellant responded as follows:

"He said someone came in a back door here and I said who are you looking for and he repeated again that someone came in a door back there, so I said I need to know who you're looking for, so he headed toward the area where he was saying someone had entered the building and I said how did you come into the building and he indicated that he had come in the door at the back, one of the back doors at the theater lobby entrance.

\* \* \*

I asked him how he came in and I said that that door is locked and asked him who let him into the building because that door is locked and is not, it's not a door where people can come in unless someone lets them in. And he said that, and I'm not sure at this point if he was saying he was there to see the Hispanic man who was on the maintenance crew or if he said that the Hispanic man on the maintenance crew had let him in that door.

\* \* \*

And then he said, he said you know, he said the Hispanic man, he said the guy who speaks Spanish, he said you know I saw him here about a month ago. And so I explained to him that any guests needed to come in through the front door and be checked in at the reception booth."

Ms. Fuoss offered to escort appellant to the reception desk for him to register as a guest. Appellant refused and apparently left Holy Cross. When Ms. Fuoss returned to her office, she discovered that either $11.00 or $13.00 was missing from her wallet. Ms. Fuoss contacted David Flores, head of maintenance at Holy Cross, and asked him whether he had seen anyone matching appellant's description in the building. Mr. Flores stated that he had not. He subsequently walked around the hallways looking for such an individual, but never

found anyone matching appellant's description. Mr. Flores further testified that he neither let anyone into the building, nor spoke to anyone about a job that day.

Walter Glaude, head of security at Holy Cross, testified that whenever guests enter the school, they must check in at the receptionist station, sign in, and log in their car. After doing so, the receptionist issues an ID badge which must be visible while the guest remains in the school. Ms. Fristoe testified that appellant was not wearing a security badge on the day she saw appellant in Ms. Fuoss' office. Ms. Fuoss also said that appellant had not registered as a guest at Holy Cross on that date.

During the investigation, Detective Sarit Scott showed Mr. Flores a photo array which included a photograph of appellant. In response to the array, Mr. Flores identified appellant as an individual that he had spoken to about a job at Holy Cross in April 2004. Prior to trial, appellant filed an "omnibus" motion [3] which included a motion to suppress the photo identification made by Mr. Flores. The court held a pre-trial hearing on the motion to suppress. At the beginning of the hearing, defense counsel moved into evidence State's Exhibit No. 1, six photographs of black males and State's Exhibit No. 2, a document captioned "Photographic Array Information Sheet, Form MCP 619, Rev. 7/99." [4] Both defense counsel

---

**3.** Some defense counsel file what has become known as an "omnibus" motion. In *Southern v. State*, 371 Md. 93, 807 A.2d 13 (2002), we defined an omnibus motion as "the term given to a motion that encompasses the mandatory motions that must be filed in the circuit court pursuant to Maryland Rule 4–252(a)." *Id.* at 96 n. 2, 807 A.2d at 15 n. 2. Such a motion is often filed early in the case, with little or no articulated legal or factual underpinnings. We have noted that "[a]lthough that practice is not what the Rule anticipates and is not to be encouraged, we have not disturbed the discretion of the trial courts to permit defendants to supplement unsupported allegations in the motion at or before the hearing, at least where the State is not unduly prejudiced by being called upon to respond immediately to allegations of which it had no prior notice." *Denicolis v. State*, 378 Md. 646, 660, 837 A.2d 944, 953 (2003).

**4.** The form appears to be a standard Montgomery County Police form, providing for the name, address and personal information of the viewer

and the State requested the opportunity to call Detective Scott as a witness, but the motions court denied the requests. The following exchange occurred during the hearing:

"DEFENSE COUNSEL: Well, specifically if you note the second page of, page 110,[5] has Mr. Flores's statement 'oh, wait, that's him.' And this kind of causes two issues. First of all, 'oh, wait, that's him,' implies that perhaps Mr. Flores had viewed that photographic array once before and more importantly Mr. Flores, the only prior identification Mr. Flores gave was in an interview that he offered to Detective Scott on July 7th, and in that interview Mr. Flores specifically said that two months earlier, Your Honor, he had seen somebody who appeared to be in their mid–30s, who was about five foot seven who he believed was the defendant, the suspect at issue.

During that time frame he claims, Mr. Flores said in the interview that he was walking and talking to the defendant, or to the person who he believes is the defendant, and so not only was this identification prior to the photo array made two months earlier, but he identified the person as being in their mid–30s. The defendant is in his mid to late 40s. He identified the defendant as being five-seven, the defendant's five-nine. And moreover, he was in the middle of a conversation, he was walking and talking so there's some question as to whether or not his earlier identification was even one where he would have had an opportunity to take note of the person that he's now claiming subsequent to arrest to be the person he identified two months earlier.

And so for these reasons we call into question the validity and relevance, if you will, of that particular identification that was made on, I believe, July 20th.

---

of the photographs, printed instructions to the viewer with respect to the array, identification numbers of the persons used in the photographic array, the date and time the array was shown, the viewers comments to the array, and a place for the viewers initials.

**5.** At the motions hearing, defense counsel referred to pgs. 109 and 110. There is nothing in this record corresponding to those pages.

* * *

THE COURT: The only thing that's before me are these two sheets of paper with the comment, 'oh, wait, this is the guy.' I have a hard time seeing how that constitutes an improper identification procedure or an unduly suggestive. I mean the, I just, is there any further evidence that you wish me to consider, [Defense Counsel]?

DEFENSE COUNSEL: Well, Your Honor, we believe that the photo array, there are reasons to question the set up of the photo array. If you look at the evidence in front of you, you'll note that Number 3, there's a cross through, if you turn to the first page, 109, you'll note that there is a marked out Number 3. So there's some question as to how this photo array was conducted. There's some question as to the procedure, and there's also some question as to why there was a gap between the arrest, about a two week gap, between the arrest and the showing of the photo array.

Moreover, it's not clear how these individuals whose pictures you see were selected, and it's also not clear why Mr. Flores ... [was] selected when, as [the assistant state's attorney] said earlier, there were a host of, alleged host of witnesses who claim that they saw defendant on and around the property on the dates in question.

And so the questions are as follows: What is the validity of the photo array, why is number 3 crossed out? Why was there a two week gap, and why are there only two witnesses who saw the photo array and whose evidence has been entered in this case?

And so we would like to question further, I believe it's Detective Scott who was responsible for the photo array.

THE COURT: If this is the only evidence that's being offered in support of the motion to suppress it, the fact that there may be some questions or, that isn't enough for me to make a determination that there was an unduly suggestive procedure.

* * *

THE COURT: Well, the issue on a motion to suppress the identification as to whether or not the viewing procedure, which was conducted was illegal. The burden is on the defendant to establish, to raise something about the procedure that could be viewed as illegal. It's a prima facie burden. There's some question raised with respect to age, height of an individual identified by Mr. Flores. But that doesn't, there's nothing before me that would allow me to find on a prima facie basis that the viewing procedure was illegally conducted. That would then shift the burden to the State.

So I'm going to deny the motion to suppress the identification."

No witnesses testified at the motions hearing, and as indicated above, the court denied the motion to suppress. The jury returned a guilty verdict and appellant was sentenced to a term of incarceration.

Appellant noted a timely appeal to the Court of Special Appeals. We granted certiorari on our own initiative to address the identification issue and the sufficiency of the evidence. *Jones v. State*, 390 Md. 500, 889 A.2d 418 (2006).

## II.

Appellant argues that the motions court erred by failing to permit defense counsel to call as a witness the detective who conducted the photo array. He maintains that without the ability to call that witness, he was precluded from putting on evidence to establish that the photo array procedure was conducted in an unduly suggestive manner. He relies upon the Compulsory Process Clause of the Sixth Amendment to the United States Constitution and the corresponding clause in Article 21 of the Maryland Declaration of Rights, claiming that these provisions entitled him to call witnesses at a motions hearing made pursuant to Maryland Rule 4–252, Mandatory Motions in Circuit Court.

In addition to his constitutional arguments, appellant makes several other arguments based on the Maryland Rules of

Criminal Procedure. First, he argues that Rule 4–265 provides a defendant the right to subpoena witnesses at motions hearings. Next, appellant asserts that under Rule 4–252, he was entitled to a meaningful hearing on his motion to suppress, and not merely one to present arguments on the averments. Appellant argues that because there was a factual dispute central to the resolution of the motion, he was entitled to a hearing which addressed the evidentiary issue raised in his motion. He asserts that the right to a hearing is not conditioned, as the State argues, upon his making specific allegations or a preliminary showing of suggestivity.

It is the State's position that the motions court exercised its discretion properly in refusing to permit the defense to call Detective Scott because appellant failed to meet his initial burden of establishing by prima facie evidence that the photo identification procedure was impermissibly suggestive. He failed, the State continues, by offering no argument in support of his allegation of suggestiveness and by failing to establish the relevance of the detective's testimony. The State argues that in order to call witnesses at a motions hearing to suppress a photo identification, a defendant must make a specific factual averment which would show impermissible suggestiveness.[6]

### III.

The use of photographic displays by the police to identify suspects is used widely in the United States, and when conducted properly, has been held to be admissible in evidence. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Supreme Court has noted that "[d]espite the hazards of initial identification by

---

**6.** The State argues that if there was error, it was harmless. Inasmuch as we hold that the evidence was insufficient to support the second degree burglary conviction, the only conviction before us, we do not address the harmless error issue. Appellant's theft conviction was based upon his plea of guilty and is not before the Court in this appeal. *See Sutton v. State,* 289 Md. 359, 364, 424 A.2d 755, 758 (1981) (stating that a defendant "who pleads guilty waives any and all defenses").

photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." *Id.* at 384, 390 U.S. 377, 88 S.Ct. at 971, 19 L.Ed.2d 1247. Nonetheless, the defendant is protected by due process "against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Moore v. Illinois,* 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977), quoted in *Webster v. State,* 299 Md. 581, 599–600, 474 A.2d 1305, 1314–15 (1984).

In *Simmons,* the Supreme Court recognized that improper use of photographs by police may sometimes cause witnesses to make misidentifications. *Simmons v. United States,* 390 U.S. at 383–84, 88 S.Ct. at 971, 19 L.Ed.2d 1247. The Court noted:

> "A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification."

*Id.* The *Simmons* Court declined to prohibit categorically the use of photographs, either as a matter of constitutional law or in the exercise of its supervisory power, holding as follows:

> "[E]ach case must be considered on its own facts, and ... convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

*Id.* at 384, 390 U.S. 377, 88 S.Ct. at 971, 19 L.Ed.2d 1247.

In *Jones v. State*, 310 Md. 569, 530 A.2d 743 (1987) (overruled on different grounds), we addressed an issue related to a motion to suppress an extra-judicial identification and the due process protections against admissibility of evidence derived from out-of-court, suggestive identification procedures.[7] Relying on *Webster v. State*, 299 Md. 581, 474 A.2d 1305, we pointed out that the inquiry for due process challenges to extra-judicial identifications is a two step inquiry. *Jones*, 310 Md. at 577, 530 A.2d at 747. The first is whether the identification procedure was impermissibly suggestive. *Id.* If the answer is "no," the inquiry ends and both the extra-judicial identification and the in-court identification are admissible at trial. *Id.* If, on the other hand, the procedure was impermissibly suggestive, the second step is triggered, and the court must determine whether, under the totality of the circumstances, the identification was reliable.[8] *Id.* We pointed

---

7. Judge Orth, writing for a panel in the Court of Special Appeals, noted that an "extra-judicial identification is usually made either by a personal confrontation between the witness and the accused or by a viewing of photographs by the witness...." *Smith and Samuels v. State*, 6 Md.App. 59, 64, 250 A.2d 285, 288 (1969).

8. In *Webster v. State*, 299 Md. 581, 474 A.2d 1305 (1984), we noted that the Supreme Court has fashioned a sliding scale of "taint" with respect to extra-judicial identifications and due process challenges. With respect to suggestivity, we noted that the procedure may be as follows:

> "(1) Suggestive, but permissibly so. *See Stovall [v. Denno]*, 388 U.S. 293[, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)].

out in *Jones* that in the context of a pre-trial photo identification, unless and until the defendant establishes that the identification procedure was in some way suggestive, the reliability of a witness' identification is not relevant for due process purposes. *Id.* at 578, 530 A.2d at 747.

In *Smith and Samuels v. State,* 6 Md.App. 59, 250 A.2d 285 (1969), Judge Orth discussed the relative burdens on each party to a motion to suppress identification evidence. He

(2) Impermissibly (unnecessarily) suggestive. *See [Neil v.] Biggers,* 409 U.S. 188[, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)].

(3) So impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Id.* at 198 [, 93 S.Ct. at 381, 34 L.Ed.2d 401].

(4) So impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification. *See Stovall,* 388 U.S. at 301–302, 87 S.Ct. at 1972, 18 L.Ed.2d 1199. *Simmons [v. United States],* 390 U.S. [377,] 384, 88 S.Ct. [967,] 971, [19 L.Ed.2d 1247 (1968)]. *Biggers,* 409 U.S. at 198, 93 S.Ct. at 381 [34 L.Ed.2d 401]." *Webster,* 299 Md. at 600, 474 A.2d at 1315. The degree of taint of the confrontation is the lynchpin of the exclusionary rule, determined by "fairness as required by the Due Process Clause of the Fourteenth Amendment." *Manson v. Brathwaite,* 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977).

In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the Supreme Court was concerned with the reliability of a pre-trial identification when the defendant claims that the pre-trial identification was made under impermissibly suggestive circumstances. The Court identified several factors to be considered in evaluating the likelihood of misidentification. They "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199–200, 409 U.S. 188, 93 S.Ct. at 382, 34 L.Ed.2d 401. *Biggers* is based on due process considerations. *See State v. McMorris,* 213 Wis.2d 156, 570 N.W.2d 384, 393 (1997). "The *Biggers* test is derived from due process considerations and is primarily based upon the need to avoid the 'very substantial likelihood of irreparable misidentification.'" *Id.* at 395 (Crooks, J., dissenting) (quoting *Biggers,* 409 U.S. at 197, 93 S.Ct. at 381, 34 L.Ed.2d 401 (quoting *Simmons,* 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d 1247 (internal citations omitted))). If the extra-judicial identification is impermissibly suggestive, the State must show by clear and convincing evidence that evidence of the witnesses' in court identification of the defendant had an "independent origin," *i.e.,* that the source of the in-court identification was the eyewitnesses observation of the perpetrator of the crime and was independent of the tainted pre-trial identification procedure.

pointed out that the initial burden of going forward, and of persuasion, rests upon the defendant. He wrote as follows:

"At the hearing on the issue raised by the challenge the burden is on the defendant to show, *prima facie*, that the pre-trial confrontation or viewing of photographs was illegal, and if he so shows, the burden shifts to the State to show by clear and convincing evidence that it was legal. If the court finds that the State has met its burden and that the pre-trial confrontation or viewing was legal, an in-court identification by the witness present at the pre-trial confrontation or viewing is admissible as substantive evidence. And if such witness made a pre-trial identification, his testimony to that effect is so admissible. And, the testimony of a third party present when the pre-trial identification was made is so admissible provided the out-of-court declarant is at the trial and subject to cross-examination; whether or not he makes an in-court identification. If the court finds that the pre-trial confrontation or viewing was illegal, any and all evidence of the pre-trial identification is *per se* inadmissible. The burden is then on the State to establish that the in-court identification offered had a source independent of the illegal pre-trial confrontation or viewing. It must do this 'by clear and convincing evidence' that the in-court identification is based 'upon observations of the suspect' by the witness other than the confrontation or photographic identifications."

*Id.* at 68, 250 A.2d at 291.

## IV.

We turn now to the motions court's refusal to allow appellant to call Detective Scott as a witness at the suppression hearing. The State points out that this Court has never addressed directly the specific issue of "what a defendant needs to allege in order to present evidence, and more specifically in this case, call a witness, in order to establish if an identification procedure is impermissibly suggestive." The State urges that we require that before a trial court conducts an evidentiary hearing on the defendant's motion to suppress

an extra-judicial identification, the defendant offer grounds or make a factual argument in support of an allegation of impermissible suggestiveness, and that an unsupported allegation that the procedure was impermissibly suggestive is insufficient.

■ At the outset, we reject appellant's argument that either the United States or the Maryland Constitution require the trial court to hold an evidentiary hearing whereby he could call witnesses in order to prevail upon his motion. The story does not end here, however. Although neither the United States Constitution nor the Maryland Declaration of Rights requires a *per se* rule compelling a judicial determination outside the presence of the jury of the admissibility of identification evidence, *Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981),[9] many courts have recognized that such a procedure is advisable. *See id.* at 349, 449 U.S. 341, 101 S.Ct. at 659, 66 L.Ed.2d 549 (stating that a "judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable"); *People v. Mendoza,* 82 N.Y.2d 415, 604 N.Y.S.2d 922, 624 N.E.2d 1017, 1021 (1993) ("defendants should have fair pretrial procedures to address alleged constitutional violations"); *In re F.G.,* 576 A.2d 724, 725 (D.C.1990) (en banc) ("every defendant is entitled to an evidentiary hearing on a motion to suppress a showup identification"); *State v. Freeman,* 313 N.C. 539, 330 S.E.2d 465, 470 (1985) ("[w]hen a motion to suppress identification testimony is made, the trial judge must conduct a voir dire and make findings of fact to support his conclusion of law and ruling as to the admissibility of evidence"); *People v. Robinson,* 46 Ill.2d 229, 263 N.E.2d 57, 58–59 (1970) (when dealing with a motion to suppress an identification, "there is no question that a defendant has a right to a fair and impartial

---

9. As an exception to the general rule that a hearing is not ordinarily constitutionally required, the Supreme Court stated in *Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) that "[i]n some circumstances, not presented here, such a determination may be constitutionally necessary." 449 U.S. at 349, 101 S.Ct. at 659, 66 L.Ed.2d 549.

hearing"). Moreover, under the Maryland Rules of Procedure, Rule 4–252 embodies "this Court's desire that evidentiary rulings on the suppression of evidence be made before trial." *Long v. State*, 343 Md. 662, 668, 684 A.2d 445, 448 (1996).

Rule 4–252 governs the filing of motions to suppress evidence in criminal cases in circuit court.[10] The plain language of the Rule requires, with an exception not here relevant, that suppression motions "filed pursuant to the Rule shall be determined before trial and, to the extent practicable, before the day of trial...." Rule 4–252(g). Since our adoption of Rule 4–252, whether a motion to suppress must be considered pre-trial is rarely, if ever, an issue in a criminal case; the issue presented in this case, as to the procedure a motions court should follow, has never been addressed by this Court.

■ We begin with the plain language of Rule 4–252.[11] Section (a) of the Rule identifies those motions that are considered mandatory in nature, and if not raised in conformance with the Rule are waived unless the court, for good cause, finds otherwise. A challenge to a pretrial identification is a mandatory motion that must be raised under section (a).

---

**10.** Rule 4–252 states, in pertinent part, as follows:

"(a) **Mandatory motions.** In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

\* \* \*

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

\* \* \*

(b) **Time for filing mandatory motions.** A motion under section (a) of this Rule shall be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213(c), except when discovery discloses the basis for a motion, the motion may be filed within five days after the discovery is furnished."

**11.** The same principles used to construe statutes apply to the interpretation of procedural rules. *State v. Williams*, 392 Md. 194, 206, 896 A.2d 973, 980 (2006).

Section (e) of the Rule addresses the content of a motion, stating as follows:

> "**Content.** A motion filed pursuant to this Rule shall ... state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments. Every motion shall contain or be accompanied by a statement of points and citation of authorities."

Section (g)(1) addresses the court's determination of the motion, and states as follows:

> "**Generally.** Motions filed pursuant to this Rule shall be determined before trial and, to the extent practicable, before the day of trial, except that the court may defer until after trial its determination of a motion to dismiss for failure to obtain a speedy trial. If factual issues are involved in determining the motion, the court shall state its findings on the record."

The State relies on to Rule 4–252(e) to support its argument that a defendant should be required to proffer a full factual averment in support of a motion to suppress evidence. We do not agree that this Rule provides the State the solace it seeks. Although the Rule is clear that a motion alleging an illegal source of information as the basis for *probable cause* must be supported by precise and specific factual averments, it is silent as to the issue of identification and more specifically, it does not address whether a defendant has an obligation to satisfy some threshold burden to present definite, specific or detailed allegations of suggestivity.

There is a difference between a motion to suppress evidence based on an illegal source of information as the basis for probable cause and a motion to suppress an identification. First, the Rule does not require a criminal defendant to make a factual proffer of the nature of the alleged suggestivity before he is entitled to an evidentiary hearing on a motion to suppress an extra-judicial identification. Second, motions to suppress based on fourth amendment violations differ from

motions to suppress photographic array identifications (or showups) because the amount of information available to a defendant differs significantly. *See e.g., In re F.G.*, 576 A.2d at 726 (noting that as opposed to showup identifications, in most typical fourth amendment contexts a defendant is "privy to the facts which might form the basis of a challenge, and can allege them with some specificity in his motion papers.... An accused is present when an illegal arrest is made, when he or his environs are searched illegally, when a *Miranda* violation occurs, or when he is compelled to give a confession involuntarily"); *Mendoza*, 604 N.Y.S.2d 922, 624 N.E.2d at 1023 (finding that based on state statute, a defendant making a motion to suppress evidence must plead precise facts demonstrating an expectation of privacy, while a defendant need not do so when challenging a pretrial identification because "in many instances [a] defendant simply does not know the facts surrounding certain pretrial identification procedures, such as photo arrays ... [whereas it is a] defendant alone who actually knows his or her connection with the searched area" (internal citations omitted)).

The State places too high a bar for a defendant to meet. As we have indicated, the burden is upon the defendant to make a prima facie showing of suggestivity at a suppression hearing. Because of the limited nature of discovery in criminal cases in this State, a defendant in many instances will simply not know the facts surrounding the extra-judicial photographic identification procedure.[12] Unlike a corporeal lineup, where a defendant has the right to the presence of counsel under most circumstances, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), a defendant has no right to have counsel present when law enforcement officers display photographs pretrial to witnesses. *Moore*, 434 U.S. at

---

12. In Maryland, discovery as a matter of right, as opposed to "informal discovery" often provided as a matter of grace by the State's Attorney, is very limited. Aside from the discovery rights enjoyed by a defendant which flow from the federal and Maryland Constitutions, *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a defendant is entitled to discovery pursuant to Rule 4–263.

227 n. 3, 98 S.Ct. at 464 n. 3, 54 L.Ed.2d 424 (stating that the Sixth Amendment does not require that defense counsel be present when a witness views police or prosecution photographic arrays); *United States v. Ash,* 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973) (holding that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender"). It is not reasonable to require specific factual allegations of suggestivity before a defendant may call a witness in a suppression motion. Second, because the question of any suggestiveness in a photographic identification procedure must be examined in each individual case under the totality of the circumstances, *Simmons,* 390 U.S. at 383, 88 S.Ct. at 970, 19 L.Ed.2d 1247, a defendant should be entitled to explore the circumstances and the individual procedures employed by law enforcement in order to establish any unfairness in the procedure. To determine the validity of a photographic array, a court must look to the totality of the circumstances on a case-by-case basis. A defendant should be entitled to present the facts and circumstances surrounding the procedures used by state agents and to enable the motions judge to fulfill his or her obligation to set out findings of facts on the record when ruling on the motion.

Although we do not require a specific, factual argument in support of an allegation of impermissible suggestiveness as urged by the State, a defendant must state sufficient information to put the court and the State on notice of the evidence he or she wishes to suppress and the basis therefore. Neither the trial court nor the prosecutor should be surprised at the hearing. We have made clear that the purpose underlying the requirement of Rule 4–252(e) that a motion to suppress state the grounds upon which it is made and contain or be accompanied by a statement of points and authorities "is to alert both the court and the prosecutor to the precise nature of the complaint, in order that the prosecutor have a fair opportunity to defend against it and that the court understand the issue before it." *Denicolis v. State,* 378 Md. 646,

660, 837 A.2d 944, 952 (2003). More is not required to entitle a defendant to call a witness at a motions hearing to suppress a photographic array.[13]

 In the present case, appellant stated in his motion that "any in-court identification of the Defendant by prosecution witnesses will be tainted as the result of impermissibly suggestive identification procedures undertaken by police authorities as to give rise to a substantial likelihood of irreparable misidentification." The court and the State were well aware of the point of appellant's challenge. The court erred in not permitting appellant to call Detective Scott as a witness to set out the facts and circumstances surrounding the identification procedure.

A similar issue arose in the District of Columbia Court of Appeals in the case of *In re F.G.*, 576 A.2d 724. There the court held that, based primarily upon the defendant's limited access to the facts surrounding pretrial photographic displays, "the only proper course is to guarantee a pretrial evidentiary hearing for a defendant's challenge to a showup identification at which government witnesses are made available." *Id.* at 727. The juvenile in that case had simply argued that the showup identification was unduly suggestive and unreliable, without alleging any unusual facts about his particular identification. He argued at the trial level that he was entitled to an evidentiary hearing where he could discover additional facts which might support his motion to suppress. *Id.* The motions court denied his motion without a hearing.

On appeal, the government argued that an identification suppression motion should be required to allege the same specificity as a fourth amendment suppression motion. *Id.*

---

**13.** Our holding today should not be read as creating an absolute right of defendants to call any or all witnesses at a suppression hearing. Specifically, as the issue is not before us, we do not address whether a defendant may call the identifying witness at the hearing. *See People v. Chipp*, 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608 (1990) (holding that under the circumstances presented therein, defendant could not call the complaining witness at a pretrial suppression motion) (C.J. Kaye, dissenting).

The District of Columbia Court of Appeals rejected that view, reasoning that unlike a lineup where the defendant has counsel and is privy to the facts, or the typical fourth amendment search and seizure situation where the defendant is usually present, a defendant has no right to counsel at a showup. The court stated as follows:

> "In challenging a showup identification, however, a defendant has little access to the evidence necessary to make factual allegations warranting relief, in contrast with the typical lineup identification and fourth amendment seizure situations."

*Id.* at 726. The court was not satisfied that informal discovery would provide defendants with enough relevant information for proper evaluation of a possible motion to suppress a showup identification.

The concerns expressed by the District of Columbia Court of Appeals regarding showups apply equally as well to photographic identifications. We hold that the court erred in not permitting appellant to call Detective Scott as a witness to set out the facts and circumstances surrounding the identification procedure.

### V.

Appellant argues that the evidence was insufficient to support a finding of guilt on second degree burglary. He maintains that there was no evidence of a breaking, a required element under the statute. We agree.

Section 6–203(a) provides as follows:

"(a) *Prohibited—Breaking and entering with intent to commit theft, violence, or arson.*—A person may not break and enter the storehouse of another with the intent to commit theft, a crime of violence, or arson in the second degree."

The breaking element of statutory burglary is given the same meaning it had in common law burglary. *Brooks v. State,* 277 Md. 155, 159, 353 A.2d 217, 220 (1976). A breaking occurs where there has been either an actual breaking or a construc-

tive breaking. *Winder v. State,* 362 Md. 275, 326, 765 A.2d 97, 124 (2001); *Oken v. State,* 327 Md. 628, 662, 612 A.2d 258, 274 (1992); *Brooks,* 277 Md. at 159, 353 A.2d at 220. We have defined an actual breaking as:

"unloosing, removing or displacing any covering or fastening of the premises. It may consist of lifting a latch, drawing a bolt, raising an unfastened window, turning a key or knob, pushing open a door kept closed merely by its own weight."

*Dorsey v. State,* 231 Md. 278, 280, 189 A.2d 623, 624 (1963) (internal citations omitted). *See also* Rollin M. Perkins & Ronald N. Boyce, Criminal law 246–47 (3rd ed. 1989) (stating that for an actual breaking to occur, a burglar must make "an opening of the building by trespass. To enter through an *open* door or window is not a breaking"). Constructive breaking involves entry gained by artifice, fraud, conspiracy or threat. *Winder,* 362 Md. at 326, 765 A.2d at 124.

The State failed to present sufficient evidence of a breaking, either actual or constructive. The State offered no proof that appellant opened any window or door in order to enter Holy Cross. Although the State presented some evidence that the point of entry into the building was a kitchen window, and that there were fingerprints on the refrigerator, there was no evidence presented that the window had been secured previously, or that the fingerprints found on the refrigerator belonged to appellant. The State presented no evidence connecting appellant to the window, or that there was even an actual breaking.

There was insufficient evidence to establish a constructive breaking. The State argues that because there was testimony presented that appellant's claim that an employee let him in the building without giving him the required security badge or without his checking in at the security desk, the evidence strongly suggests that he gained entry by fraud or by virtue of a conspiracy with someone within the Academy. While it is accurate that a conviction may rest on circumstantial evidence alone, we explained in *Oken v. State,* 327 Md. at 663, 612 A.2d at 275 (quoting *Wilson v. State,* 319 Md. 530,

536–37, 573 A.2d 831, 834 (1990)), that "a conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." As we have noted, if the point of entry into the building was through the kitchen window, there was no evidence that the window had been secured or that anyone had to open the window in order to enter. That appellant entered the building through fraud or artifice is pure speculation.

***JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. COSTS TO BE PAID BY MONTGOMERY COUNTY.***